## Smart City Capital LLC Plaintiff vs. Rahul Bhardwaj, et al Defendant

**Broward County Case Number:** CACE23015818
**State Reporting Number:** 062023CA015818AXXXCE
**Court Type:** Civil
**Case Type:** Contract and Indebtedness
**Incident Date:** N/A
**Filing Date:** 07/18/2023
**Court Location:** Central Courthouse
**Case Status:** Pending
**Magistrate Id / Name:** N/A
**Judge ID / Name:** 07 Tuter, Jack

### — Party(ies)

Total: 10

| Party Type | Party Name | ❓ Address | ❓ Attorneys / Address ★ Denotes Lead Attorney |
|---|---|---|---|
| Plaintiff | **Smart City Capital LLC** | | ★ Cagan, Scott Lawrence Retained Bar ID: 822681 Gray Robinson, P.A 401 East Las Olas Blvd., Suite 1000 Fort Lauderdale, FL 33301-0000 **Status: Active** |
| Defendant | **Bhardwaj, Rahul** | | |
| Defendant | **Sanford, James M** | | |
| Defendant | **Bidwell, Michael** | | |
| Defendant | **Digital Infrastructure Group, Inc.** | | |
| Defendant | **Digital Infrastructure Capital Group, LLC** | | |

| Party Type | Party Name | ❓ Address | ❓ Attorneys / Address ★ Denotes Lead Attorney |
|---|---|---|---|
| Defendant | **SAG Harbor Advisors, Inc.** | | |
| Defendant | **Meridiam Infrastructure North American Corporation** | | |
| Defendant | **OnlightL3C, LLC** | | |
| Defendant | **Pegues, Michael** | | |

## − Disposition(s)

Total: 0

| Date | Statistical Closure(s) |
|---|---|

| Date | Disposition(s) | View | Page(s) |
|---|---|---|---|

## − Collection(s)

Total: 0

**There is no Collection information available for this case.**

## − Event(s) & Document(s)

Total: 13

| Date | Description | Additional Text | View | Pages |
|---|---|---|---|---|
| 07/21/2023 | **eSummons Issuance** | Party: *Defendant* Bhardwaj, Rahul | 📄 | 2 |
| 07/21/2023 | **eSummons Issuance** | Party: *Defendant* Sanford, James M | 📄 | 2 |
| 07/21/2023 | **eSummons Issuance** | Party: *Defendant* Bidwell, Michael | 📄 | 2 |

| Date | Description | Additional Text | View | Pages |
|---|---|---|---|---|
| 07/21/2023 | **eSummons Issuance** | Party: *Defendant* Digital Infrastructure Group, Inc. | 📄 | 2 |
| 07/21/2023 | **eSummons Issuance** | Party: *Defendant* Digital Infrastructure Capital Group, LLC | 📄 | 2 |
| 07/21/2023 | **eSummons Issuance** | Party: *Defendant* SAG Harbor Advisors, Inc. | 📄 | 2 |
| 07/21/2023 | **eSummons Issuance** | Party: *Defendant* Meridiam Infrastructure North American Corporation | 📄 | 2 |
| 07/21/2023 | **eSummons Issuance** | Party: *Defendant* OnlightL3C, LLC | 📄 | 2 |
| 07/21/2023 | **eSummons Issuance** | Party: *Defendant* Pegues, Michael | 📄 | 2 |
| 07/18/2023 | **Per AOSC20-23 Amd12, Case is determined General** | | | |
| 07/18/2023 | **Civil Cover Sheet** | Amount: $100,001.00 | 📄 | 3 |
| 07/18/2023 | **Complaint (eFiled)** | FOR DAMAGES AND PERMANENT INJUNCTIVE RELIEF Party: *Plaintiff* Smart City Capital LLC | 📄 | 67 |
| 07/18/2023 | **Notice of Intent to File in Complex Business & Tort Division** | NOTICE OF INTENT TO FILE NEW CASE IN THE COMPLEX BUSINESS OR TORT DIVISION Party: *Plaintiff* Smart City Capital LLC | 📄 | 2 |

**—** Hearing(s)                                                    Total: 0

**There is no Disposition information available for this case.**

**—** Related Case(s)                                               Total: 0

**There is no related case information available for this case.**



# Electronically Certified Court Record

## (cover page)

This cover page is for informational purposes only and is not a requirement when presenting the **Electronic Certified Document**. Directly below the cover page, at the bottom of page 1, you will find the digital signature bearing the identity and authority of the Clerk. On the left side of each page is a unique code identifying the electronic certification for this document.

## DOCUMENT INFORMATION

| | |
|---|---|
| **Agency Name:** | Broward County Clerk of Courts |
| **Clerk of the Circuit Court:** | Honorable Brenda D. Forman |
| **Date Issued:** | 8/8/2023 12:35:02 PM |
| **Unique Reference Number:** | CAA-FAA-BCABB-HCAADJEC-GJBGCG-J |
| **Case Docket:** | 7/18/2023 - Notice of Intent to File in Complex Business & Tort Division - 2 Pages |
| **Requesting Party Code:** | 500 |
| **Requesting Party Reference:** | A202308081230311148 |

## HOW TO VERIFY THIS DOCUMENT

This electronically certified Court Record contains a unique electronic reference number for identification printed on each page. This document is delivered in PDF format and contains a digital signature identifying the certifier and a tamper proof seal indicating whether this document has been tampered with. The second page of this document contains a digital signature indicating the certifier as the Broward County Clerk of Courts. Open this document using Adobe Reader software to verify the digital signature of the author. Visit https://www.browardclerk.org/ecertify to learn more about validating this certified copy.



Case Number: CACE-23-015818 Division: 02
Filing # 177680886 E-Filed 07/18/2023 03:04:21 PM

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY,
FLORIDA

CASE NO. _____

SMART CITY CAPITAL, LLC,

     Plaintiff,

v.

RAHUL BHARDWAJ, JAMES M. SANFORD,
MICHAEL BIDWELL, DIGITAL INFRASTRUCTURE
GROUP, INC., DIGITAL INFRASTRUCTURE
CAPITAL GROUP, LLC, SAG HARBOR ADVISORS,
INC., MERIDIAM INFRASTRUCTURE NORTH
AMERICA CORPORATION, ONLIGHTL3C, LLC,
and MICHAEL PEGUES,

     Defendants.

_____/

### NOTICE OF INTENT TO FILE NEW CASE IN THE
### COMPLEX BUSINESS OR TORT DIVISION

THIS ACTION IS APPROPRIATE FOR ASSIGNMENT TO A COMPLEX BUSINESS OR
TORT DIVISION AND COMPLIES WITH REQUIREMENTS FOR FILING IN SUCH
COMPLEX LITIGATION DIVISION AS SET FORTH IN ADMINISTRATIVE ORDER 2017-
35-Civ.

Is this a tort case which meets the criteria of Administrative Order 2017-35-Civ?

     YES _____               NO _X_

Is this a **business** case which meets the criteria of Administrative Order 2017-35-Civ?

     YES _X_               NO _____

Is this a class action case?

     YES _____               NO _X_

I CERTIFY the information herein is accurate and this case meets the criteria pursuant to
Administrative Order 2017-35-Civ for filing in the complex business or tort division of the
Seventeenth Judicial Circuit.

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 07/18/2023 03:04:19 PM.****

I HEREBY ATTEST THAT THIS CERTIFIED DOCUMENT IS
A TRUE AND CORRECT COPY AS SAME APPEARS ON RECORD
WITH BROWARD COUNTY CLERK OF COURTS.

VERIFY AT: HTTPS://WWW.BROWARDCLERK.ORG/ECERTIFY



Digitally signed by The Honorable Brenda D. Forman
Date: 2023.08.08 12:35:03 -04:00
Reason: Electronic Certified Copy
Location: 201 S.E. 6th Street, Fort Lauderdale, FL
33301

Unique Code : CAA-FAA-BCABB-HCAADJEC-GJBGCG-J Page 1 of 2

Unique Code : CAA-FAA-BCABB-HCAADJEC-GJBGCG-J Page 2 of 2

Dated this 18th day of July, 2023.

Respectfully submitted,

GRAYROBINSON, P.A.
/ *Scott L. Cagan, Esq.*
**SCOTT L. CAGAN, ESQ.**
Florida Bar No.: 822681
Scott.cagan@gray-robinson.com
GrayRobinson, P.A.
401 E. Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL  33301-4210
Phone: 954-761-8111

*Counsel for Plaintiff, Smart City Capital, LLC*

/17014/2#50963471 v1



# Electronically Certified Court Record

### (cover page)

This cover page is for informational purposes only and is not a requirement when presenting the **Electronic Certified Document**. Directly below the cover page, at the bottom of page 1, you will find the digital signature bearing the identity and authority of the Clerk. On the left side of each page is a unique code identifying the electronic certification for this document.

---

### DOCUMENT INFORMATION

| | |
|---|---|
| **Agency Name:** | Broward County Clerk of Courts |
| **Clerk of the Circuit Court:** | Honorable Brenda D. Forman |
| **Date Issued:** | 8/8/2023 12:34:58 PM |
| **Unique Reference Number:** | CAA-FAA-BCABB-HCAADJBH-GJBGCF-D |
| **Case Docket:** | 7/18/2023 - Civil Cover Sheet - 3 Pages |
| **Requesting Party Code:** | 500 |
| **Requesting Party Reference:** | A202308081230311148 |

---

### HOW TO VERIFY THIS DOCUMENT

This electronically certified Court Record contains a unique electronic reference number for identification printed on each page. This document is delivered in PDF format and contains a digital signature identifying the certifier and a tamper proof seal indicating whether this document has been tampered with. The second page of this document contains a digital signature indicating the certifier as the Broward County Clerk of Courts. Open this document using Adobe Reader software to verify the digital signature of the author. Visit https://www.browardclerk.org/ecertify to learn more about validating this certified copy.



Case Number: CACE-23-015818 Division: 02

Filing # 177680886 E-Filed 07/18/2023 03:04:21 PM

Unique Code : CAA-FAA-BCABB-HCAADJBH-GJBGCF-D Page 1 of 3

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.     CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>SEVENTEENTH</u>   JUDICIAL CIRCUIT, IN AND FOR <u>BROWARD</u>   COUNTY, FLORIDA

<u>Smart City Capital, LLC</u>
Plaintiff                                          Case # _____

                                                   Judge _____

vs.

<u>Rahul Bhardwaj, James M. Sanford, Michael Bidwell, Digital Infrastructure Group, Inc., Digital Infrastructure Capital Group, LLC, SAG Harbor Advisors, Inc., Meridiam Infrastructure North American Corporation, OnlightL3C, LLC, Michael Pegues</u>
Defendant

### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

### III.   TYPE OF CASE       (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 07/18/2023 03:04:19 PM.****



I HEREBY ATTEST THAT THIS CERTIFIED DOCUMENT IS
A TRUE AND CORRECT COPY AS SAME APPEARS ON RECORD
WITH BROWARD COUNTY CLERK OF COURTS.

VERIFY AT: HTTPS://WWW.BROWARDCLERK.ORG/ECERTIFY

Digitally signed by The Honorable Brenda D. Forman
Date: 2023.08.08 12:34:58 -04:00
Reason: Electronic Certified Copy
Location: 201 S.E. 6th Street, Fort Lauderdale, FL
33301

Unique Code : CAA-FAA-BCABB-HCAADJBH-GJBGCF-D Page 2 of 3

**CIRCUIT CIVIL**

- ☐ Condominium
- ☒ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☐ Negligence—other
  - ☐ Business governance
  - ☐ Business torts
  - ☐ Environmental/Toxic tort
  - ☐ Third party indemnification
  - ☐ Construction defect
  - ☐ Mass tort
  - ☐ Negligent security
  - ☐ Nursing home negligence
  - ☐ Premises liability—commercial
  - ☐ Premises liability—residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
  - ☐ Commercial foreclosure
  - ☐ Homestead residential foreclosure
  - ☐ Non-homestead residential foreclosure
  - ☐ Other real property actions

- ☐ Professional malpractice
  - ☐ Malpractice—business
  - ☐ Malpractice—medical
  - ☐ Malpractice—other professional
- ☐ Other
  - ☐ Antitrust/Trade regulation
  - ☐ Business transactions
  - ☐ Constitutional challenge—statute or ordinance
  - ☐ Constitutional challenge—proposed amendment
  - ☐ Corporate trusts
  - ☐ Discrimination—employment or other
  - ☐ Insurance claims
  - ☐ Intellectual property
  - ☐ Libel/Slander
  - ☐ Shareholder derivative action
  - ☐ Securities litigation
  - ☐ Trade secrets
  - ☐ Trust litigation

**COUNTY CIVIL**

- ☐ Small Claims up to $8,000
- ☐ Civil
- ☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☒ No ☐

**IV.     REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.     NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

  <u>11</u>

**VI.     IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.     HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.     IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.     DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Scott Lawrence Cagan</u>      Fla. Bar # <u>822681</u>
       Attorney or party                 (Bar # if attorney)

<u>Scott Lawrence Cagan</u>          <u>07/18/2023</u>
  (type or print name)           Date

Unique Code : CAA-FAA-BCABB-HCAADJBH-GJBGCF-D Page 3 of 3

Filing # 177680886 E-Filed 07/18/2023 03:04:21 PM

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY,
FLORIDA

CASE NO.  <u>CACE 23-015818</u>

SMART CITY CAPITAL, LLC,

      Plaintiff,

v.

RAHUL BHARDWAJ, JAMES M. SANFORD,
MICHAEL BIDWELL, DIGITAL INFRASTRUCTURE
GROUP, INC., DIGITAL INFRASTRUCTURE
CAPITAL GROUP, LLC, SAG HARBOR ADVISORS,
INC., MERIDIAM INFRASTRUCTURE NORTH
AMERICA CORPORATION, ONLIGHTL3C, LLC,
and MICHAEL PEGUES,

      Defendants.

_____/

## COMPLAINT FOR DAMAGES AND PERMANENT INJUNCTIVE RELIEF

Plaintiff, Smart City Capital, LLC ("**Smart City**" or "**Plaintiff**"), sues Defendants, Rahul

Bhardwaj ("**Bhardwaj**"), James M. Sanford ("**Sanford**"), Michael Bidwell ("**Bidwell**"),  Digital

Infrastructure Group, Inc. ("**DIG**"), Digital Infrastructure Capital Group, LLC ("**DICG**"), Sag

Harbor Advisors, Inc. ("**Sag Harbor**"), Meridiam Infrastructure North America Corporation

("**Meridiam**"), OnLightL3C, LLC, d/b/a OnLight Aurora ("**OnLight Aurora**") and Michael

Pegues ("**Pegues**") (collectively, "**Defendants**"), and alleges:

### INTRODUCTION

1.     Bhardwaj, a former high-level employee of Smart City, Sanford, an independent

contractor of Smart City, and Bidwell, an employee of a company working with Smart City,

engaged in an elaborate scheme to defraud Smart City, misappropriate its trade secrets and its other

confidential and proprietary information, interfere with Smart City's customer and business

relationships and contracts, and outright steal Smart City's business. Defendants engaged in surreptitious acts to steal Smart City's proprietary business information, including financial and business models and investing sources, in order to divert Smart City's clients and prospective clients to Defendants' newly formed personal ventures, DIG and DICG. Their misconduct is continuing. Defendants have diverted more than $300 million in business from Smart City by steering that business to their own companies, DIG and DICG.

## PARTIES, JURISDICTION, AND VENUE

2.      This is an action seeking damages in excess of $150,000, exclusive of interest, costs, and attorney's fees, and for permanent injunctive relief.

3.      Plaintiff Smart City is a Florida limited company with its principal place of business in Broward County, Florida. The sole member of Smart City is Oscar Bode, who is a Florida citizen residing in Broward County, Florida. Although certain agreements reference Smart City as a Delaware company, the *Florida* entity was the actual company that employed Defendants Bhardwaj and Bidwell, and that hired Stanford as an independent contractor. Smart City Capital, LLC, the company organized under Florida law, is headquartered in Florida and at all times conducted its operations, including its banking, in that state.

4.      Defendant Bhardwaj is a citizen of Texas.

5.      Defendant Sanford is a citizen of New York.

6.      Defendant Bidwell is a citizen of Canada. He resides in the province of Ontario, Canada.

7.      Defendant DIG is a Canadian company. Its shareholders are Bhardwaj, Sanford, and Bidwell.

8.     Defendant DICG is a Washington state company. Its members are Bhardwaj, Sanford, and Bidwell.

9.     Defendant Sag Harbor is a New York corporation with its principal place of business in Sag Harbor, N.Y.

10.    Defendant Meridiam is a Delaware corporation with its principal place of business in New York, New York.

11.    Defendant OnLight Aurora is an Illinois not-for-profit corporation with its principal place of business in Illinois.

12.    Defendant Pegues is the manager of OnLight Aurora and, upon information and belief, is a citizen of Illinois.

13.    This Court has personal jurisdiction over all of the Defendants pursuant to Florida Statute section 48.193(1)(a)(2) because they each committed tortious acts within this state and caused injury to Plaintiff Smart City in this state, including by misappropriating Smart City's trade secrets. In addition, this Court has personal jurisdiction over Defendants Bhardwaj, Sanford, Sag Harbor, Meridiam, and OnLight Aurora pursuant to Florida Statute section 48.193(7) because they breached their respective subject contracts in Florida.

14.    Venue is proper against all Defendants in Broward County pursuant to Florida Statute Section 47.011, as Plaintiff's causes of action accrued in Broward County where its trade secrets that are the subject of this action were maintained, at its headquarters, when they were misappropriated by Defendants. Venue is also proper against Defendants Bhardwaj, Sanford, Sag Harbor, Meridiam, and OnLight Aurora because Smart City's breach of contract causes of action accrued in Florida, where those Defendants breached their respective contracts.

## FACTS COMMON TO ALL COUNTS

### Smart City's Business

15.     Smart City is a global company formed by leading information technology industry executives. Smart City raises capital and assists entities and municipalities in developing superior technology models and infrastructures to meet their current and future needs.

16.     Smart City specializes in the development, financing, building, and operations of smart infrastructure projects structured as public private partnerships (P3s), as well as privately funded infrastructure projects.

17.     Smart City's projects require extensive time and resources, including Smart City's trade secrets and other confidential and proprietary information.

### Bhardwaj's Role as a Managing Director of Smart City

18.     Bhardwaj was hired by Smart City as its Managing Director for North America in May, 2019 when the Company was in the midst of an expansion. In this executive position with the Company, Bhardwaj was paid a salary in excess of $100,000 and received substantial benefits.

19.     As part of his Managing Director position with Smart City, it was necessary to entrust Bhardwaj with access to the most vital aspects of Smart City's business, including its customers, products, pricing, referral sources, marketing strategies and other important non-public information.

20.     In light of the confidential and sensitive information to be provided to Bhardwaj in his fulltime Managing Director role, as a material term to being employed in this position, and to protect Smart City's legitimate business interests, Bhardwaj signed a SCC Non-Competition Agreement on May 11, 2019 (the "Bhardwaj Non-Competition Agreement") as a precondition to serving as a Managing Director for Smart City. [A copy of that agreement is attached as **Exhibit "A"** and made a part of the pleading].

4

21.     In the Bhardwaj Non-Competition Agreement, Bhardwaj acknowledged his obligation to maintain as confidential Smart City's trade secrets and other proprietary information, and he agreed to abide by restrictive covenants both during and after serving as Managing Director for Smart City.

22.     Under the Bhardwaj Non-Competition Agreement, Bhardwaj became bound by the following non-solicitation and non-competition obligations during the time he was employed for Smart City and for a period of 2 years after his employment ended:

> 1.     **Agreement Not to Compete.** During the Restrictive Period (as defined below), Advisor agrees that he will not, as an employee, agent, consultant, advisor, independent contractor, individual, general partner, officer, director, Advisor, investor, lender or guarantor of any corporation, partnership or other entity, or in any other capacity directly or indirectly:
>
> (a) (I) participate or engage with any SCC client or prospect as well as in the design, development, manufacture, production, marketing, sale or servicing of any product, or the provision of any service, that directly relates to (1) enterprise or commercial (business-to-business or public sector / cities) or enterprise-to-consumer communications and collaborations applications that include and SCC solutions, services or funding models our sources. or (II) render any services to any SCC client, prospect or entity engaged in the design, development, manufacture, production, marketing, sale or servicing of any product, or the provision of any service, for (1) enterprise or commercial (business-to-business) or enterprise-to-consumer or public sector / cities (hereafter referred to as the "**Business**") in the Restrictive Territory; or
>
> [sic]
>
> For purposes of this Agreement, the restrictive period (referred to herein as the "**Restrictive Period**") shall commence on the termination or resignation date and shall continue until the second (2nd) anniversary of said date.

23.     As Smart City's Managing Director, Bhardwaj agreed to dedicate all of his professional time, talents, and energies to Smart City. This duty was reflected, in part, in his signed employment offer, which stated as follows:

You agree that during your Agreement with SCC you will not engage in any other employment or business-related activity unless you obtain prior written approval from the CEO of SCC. You further agree that you have disclosed to SCC all of your existing employment and/or business relationships, including, but not limited to, any consulting or advising relationships, outside directorships, investments in privately held companies, and any other relationships that may create a conflict of interest.

### Sanford's Role as a Managing Director, Head of Capital Markets for Smart City

24.     Sanford represented to Smart City that he had experience in obtaining Greenfield funding and that he was in a position to present an attractive funding opportunity for Smart City. Sanford encouraged Smart City to retain him in this regard.

25.     Based upon these representations, Smart City entered into an agreement with Sanford's company, Sag Harbor, concerning Greenfield funding opportunities for Smart City projects. In connection with this agreement, Sanford would receive the title of Managing Director, Head of Capital Markets for Smart City.

26.     Sanford began to work with Smart City as an independent contractor in December, 2019 through time he was terminated in September, 2020.

27.     As part of his Managing Director position and role with Smart City, it was necessary to entrust Sanford with access to the most vital aspects of Smart City's business including customers, eco-system/solution partners, funding partners, products, pricing, referral sources, marketing and model strategies and other important non-public information.

28.     As a result of the confidential and sensitive information provided to Sanford both as a Sag Harbor Advisor and in his Managing Director role, as a material term to working with Smart City, and to protect Smart City's legitimate business interests, Sanford signed on behalf of Sag Harbor a "Smart City Capital, Mutual Non-Disclosure, Non-Circumvention Agreement" on December 18, 2018 (the "Sag Harbor NDA") as a precondition to serving as a Managing Director

for Smart City.  [A copy of the Sag Harbor NDA is attached as **Exhibit "B"** and made a part of this pleading].

29.    In the Sag Harbor NDA, Sag Harbor and Sanford acknowledged several obligations and duties regarding the use of Smart City's confidential information and agreed to be bound by restrictive covenants both during and after Sanford served as Smart City's Managing Director.

30.    In connection with the Sag Harbor NDA, Sag Harbor and its principal, Sanford, who agreed to personally perform the services on Smart City's behalf,  acknowledged that they would be bound by the following nondisclosure obligations:

> **3.    Nondisclosure of Proprietary Information.**  The Parties agree not to use any Proprietary Information disclosed in the Relationship for its own use or for any purpose other than to carry out discussions concerning, and the undertaking of, the Relationship.  The Parties shall not disclose or permit disclosure of any Proprietary Information of the Company to third parties, other than (where applicable) directors, officers, employees, consultants and agents who are required to have the information in order to perform the Parties' authorized activities in connection with the Relationship.  The Parties have had or will have all directors, officers, employees, consultants and agents who have access to Proprietary Information of the Company sign a nondisclosure agreement in content substantially similar to this Agreement.  The Parties agree to take all reasonable and necessary measures to protect the secrecy of and avoid disclosure or unauthorized use of Proprietary Information of each party. Such measures shall include, but not be limited to, the highest degree of care that the Recipient utilizes to protect its own Proprietary Information of a similar nature, which shall be no less than reasonable care. Recipient agrees to notify the Company in writing of any actual or suspected misuse, misappropriation or unauthorized disclosure of Proprietary Information of the Company which may come to the Recipient's attention and to cooperate with the Company to stop and prevent such activities.

31.    The Sag Harbor NDA survived the termination of the agreement and protected Smart City's proprietary information "for so long as the Proprietary Information (or any portion thereof) remains confidential or proprietary.  *See* section 7.

**Bidwell's Role as Director, Smart Cities with Smart City's Business Partner,
CH2M Hill Engineers, Inc.**

32.    Michael Bidwell served as the Director, Smart Cities for an affiliate of Jacobs
Engineering, CH2M Hill Engineers, Inc. ("CH2M"), a Canadian business partner of Smart City
which serves as Project Management and Project Engineer for some of the infrastructure
components for cities and municipalities with which Smart City works.   Smart City and CH2M
entered into a "Mutual Confidentiality Agreement" dated September 23, 2016 which protected the
unauthorized disclosure and use of Smart City's confidential and proprietary information.

33.    In his role as Director, Smart Cities for Jacobs Engineering, a position that he held
from November, 2018 through February, 2021, Bidwell was responsible for working with Smart
City on Canadian "smart city" projects. Michael Bidwell had little to no "smart city" experience
when he originally started supporting Smart City.   However, he gained experience from Smart
City and Bode after being assigned to support Smart City for all Canada projects as the leader of
Jacobs' Canada team.

34.    At first, Bidwell did well in his role as the lead for the Jacobs Canada team.
However, shortly after the termination of Sanford, Bidwell began to significantly delay his
responsiveness, and his performance to Smart City further deteriorated after Bhardwaj's
resignation.

35.    As a result of this conduct, Smart City requested that Jacobs assign a new individual
to service its projects.

36.    By virtue of his roles with Smart City and Jacobs, Bidwell had first-hand
knowledge of all deals in the Smart City pipeline as well as the fact that Smart City had contracts
in place with numerous cities to facilitate providing fiber optic services to those cities.

8

## Smart City Uncovers Bhardwaj's, Sanford's, and Bidwell's Misconduct

37.     In September, 2020, Smart City terminated Sanford's role and services.

38.     In December, 2020, Bhardwaj terminated his position and role with Smart City to embark on a plan to compete against Smart City.

39.     Both before and after their terminations, Bhardwaj and Sanford committed numerous violations of their restrictive covenants.

40.     Bhardwaj and Sanford, as well as Bidwell, have taken calculated efforts to compete with Smart City, and their unlawful competition continues through today.

41.     On June 12, 2020, while still employed by Smart City, Bhardwaj – along with Sanford and Bidwell, while they were purportedly performing services for Smart City -- registered Digital Infrastructure LLC with the Delaware Department of State Division of Corporations. Three months later, on September 10, 2020, Bhardwaj, Sanford, and Bidwell registered the domain name https://diginfragroup.com, which serves as the website for DIG.  A review of the Digital Infrastructure website reveals that the company has a business model which is identical to Smart City's in that it assists cities and communities in developing a technological infrastructure.  The Digital Infrastructure website even utilizes terms originated and used by Smart City, including the term "Master Integrator."

42.     Both individually and through DIG and DICG, Bhardwaj, Sanford, and Bidwell are directly competing with Smart City, reaching out to its business partners, and in fact poaching Smart City's clients in violation of their post restrictive covenants and various laws.

43.     Although Bhardwaj, Sanford, and Bidwell tried to conceal their involvement with DIG and DICG for some time, they recently updated their LinkedIn profile pages which confirmed that they were engaging in unlawful conduct.  Attached to this Complaint as **Exhibit "C"** is Sanford's LinkedIn profile which indicates that he is a Managing Director of Capital Markets for

DIG.  Attached to this Complaint as **Exhibit "D"** is Bidwell's LinkedIn profile which indicated that he is a Managing Director with DIG.  Bhardwaj attempted to be a bit more covert than his co-defendants and has indicated on his LinkedIn profile that he is in "stealth mode".  *See* **Exhibit "E"**.  Bhardwaj also took additional efforts to conceal his actions by changing his LinkedIn screen name from his longstanding screenname Bhardwaj to Bhardwaj B.  However, when reviewing the DIG LinkedIn page, it lists Bhardwaj as one of its employees.  *See* **Exhibit "F"**.  Notably, upon seeing that their profiles were viewed by Smart City and its counsel, both Sanford and Bhardwaj deleted their profiles in an attempt to cover their tracks.

### The Aurora, Illinois Project

44.     Bhardwaj, Sanford, and Bidwell, through their new entities DIG and DICG, which were established while still working or performing services for Smart City, have obstructed a deal between Smart City and the City of Aurora, Illinois in order to divert it to their own companies, DIG and DICG.

45.     Smart City had a Memorandum of Understanding ("MOU ") in place with the City of Aurora to upgrade and replace much of the digital infrastructure for the city.  The  project with the City of Aurora was for a deal valued in excess of $300 million.  The deal with the City of Aurora was nearly complete and the city communicated its commitment to Smart City to complete the deal in the first quarter of 2021 under the existing contract between the entities. The City of Aurora, through its CIO, Defendant Michael Pegues, publicly announced the project was Smart City's on several occasions, including a Forbes interview, and communicated in writing that the project was committed to Smart City.

46.     Just prior to the time that Bhardwaj gave notice that he would be leaving Smart City, he demanded that a proprietary model prepared by Smart City on behalf of Aurora, Illinois be shared with the city, including an unlocked version.  Bhardwaj sent Aurora the unlocked

version, providing it with proprietary information concerning the costs and estimated profits for Aurora including the assumptions made by Smart City.

47.     Smart City also learned that Bhardwaj conducted numerous unauthorized calls during which he provided proprietary information to various City of Aurora personnel. Contemporaneously with the time that Bhardwaj gave notice that he would be leaving Smart City, he began to email Michael Pegues, the Chief Information Officer for the City of Aurora, Illinois, at his personal "Yahoo" and "Proton" email addresses.  This was something that he had not done prior to the time that he provided notice of his resignation to Smart City, and there was absolutely no valid business reason for him to communicate in that fashion.

48.     In January 2021, Aurora began to completely ignore Smart City, a company that it had been communicating with on a constant basis for over a year and with which it was on the precipice of closing the deal the parties contracted to close.

49.     A press release for the city of Beaumont in Alberta, Canada – another deal that Defendants interfered with as described in detail below – indicates that DIG is working with the City of Aurora, Illinois.  *See* **Exhibit "G"**.

### The Beaumont, Alberta Canada Project

50.     Bhardwaj, Sanford, and Bidwell, through their new entities DIG and DICG, have obstructed a deal between Smart City and the City of Beaumont, located in Alberta, Canada in order to divert that deal to their entities.

51.     Smart City had a Memorandum of Understanding between Smart City and Beaumont.  That Memorandum of Understanding expired on October 31, 2020, but Bhardwaj failed to fully advise Smart City of that, and he failed to seek an extension, as was routine and customary.  After the expiration of the Memorandum of Understanding, Bhardwaj not only failed

to advise Smart City of the expiration, he consistently advised Smart City, through Bode, that the deal was still on track and was only temporarily delayed and stalled for COVID-19 related reasons.

52.     However, in actuality, Bhardwaj, along with Sanford and Bidwell, were conspiring to procure this deal through their new companies, DIG and DICG.  During Bhardwaj's last days as an employee of Smart City, after he intentionally allowed the Memorandum of Understanding to run out while telling Smart City that it was simply delayed, he was sending emails to co-Defendant Bidwell about accessing SharePoints data for the Beaumont project which he claimed were needed.   Contemporaneously, Bhardwaj sent a number of confidential documents to Campbell Patterson, an individual with whom Smart City worked, while copying a number of City of Beaumont employees for the purpose of presenting to the City of Beaumont and moving the project to themselves as DIG.

53.     Smart City was able to confirm this conduct through a publicly available information on the Beaumont webpage.  *See* **Exhibit "G"**.  This press release is nearly identical to an earlier version announcing Beaumont's deal with Smart City, and in fact, the City of Beaumont simply re-issued the press release with DIG replacing Smart City.  *See* **Exhibit "H"**. This has allowed DIG to receive credit for work performed by Smart City, and substantiates the fact that DIG and DICG are advising others that it is a rebranded version of Smart City.

### The Spruce Grove, Alberta Canada Project

54.     For some time, Smart City was engaging with the city of Spruce Grove located in Alberta, Canada.  The discussions with Spruce Grove had been going well, but a contract close to materializing in December 2020 was never consummated.

55.     This was always puzzling to Smart City, as Spruce Grove had expressed a genuine interest in working with Smart City and viewed the project as beneficial to it.

56.     As a result, Bode reached out to Karla Gould, the Chief Information Officer for Spruce Grove, in late March, 2021.

57.     During this call, Ms. Gould was confused as she indicated that Spruce Grove was working with DIG and the city had been advised by Bhardwaj, Sanford, and Bidwell that DIG was in fact Smart City, and that it had simply rebranded its name.  She further indicated that, during the time he was employed by Smart City, Bhardwaj had delayed speaking with her for some time. This was done in an effort to procure the deal for DIG instead of Smart City.

58.     A review of Bhardwaj's Smart City email address has revealed that he was emailing Ms. Gould from his Smart City email address on December 18, 2020 even though his last day of employment with Smart City was 14 days earlier, December 4, 2020.   Bhardwaj had no right to continue using his Smart City email address after December 4, 2020, let alone to engage in a scheme to damage Smart City by actively diverting its business and directly competing against it.

**Bhardwaj's, Sanford's, and Bidwell's Other Unlawful Activities**

59.     In addition to the above-referenced cities, Defendants have been attempting to procure a deal with Kingston in Ontario, Canada, which is a city that Smart City had been seeking a commitment from for some time.  In an effort to procure this deal, Smart City invested substantial material resources and developed a document compliant with Canadian law specifically for the City of Kingston.

60.     Just prior to leaving Smart City, Bhardwaj had delayed his response and deliverables on several Smart City projects, in addition to the ones discussed above.

61.     It has already been uncovered that Bhardwaj has reached out to the following persons since leaving Smart City in an effort to divert business from Smart City to his new competing companies, DIG and DICG:

- Mike Allison (Vice President at NOKIA)

- Michael Brayen (Nokia)
- Jason Kalkman (Nokia)
- Shawn Sparling (Nokia Canada)
- Alex Chouinard (Nokia Canada)
- Avi Patwardhan (Jacobs)
- Ben Easterling – ATT
- Mike Zeto (SVP, Boingo)

62.    It was also discovered that prior to leaving Smart City, Bhardwaj violated company policy by forwarding all of his work emails that arrived after his last day of work to his personal email address BhardwajSCCBankup@gmail.com.  In fact, Bhardwaj was forwarding emails to this email address at least as early as October 12, 2020 – nearly two months before his last day working for Smart City on December 4, 2020.  A review of Bhardwaj's Smart City emails has also revealed that he forwarded confidential and proprietary Smart City emails to his private rb1382@georgetown.edu email address.

63.    Bhardwaj also deleted thousands of Smart City emails and documents before he left, in violation of Smart City's policy and in dereliction of his fiduciary duties to the company.

64.    A subsequent review of Sanford's Smart City email account uncovered that Sanford also forwarded emails that arrived after his departure from the Company to his Sag Harbor email address.

65.    In addition to these violations, Smart City has strong reason to believe that Bhardwaj downloaded and saved Smart City's protected business information from his Smart City computer.  Bhardwaj delayed returning his Smart City issued laptop to the company, and when he did so, it contained a password prohibiting it from unlocking.  Bhardwaj is now using this information to compete directly with Smart City.

66.    It is also believed that DIG is using Smart City's proprietary P3 contract, which Smart City paid the international law firm Dentons a substantial amount of money to create.  It is a confidential document that was not disseminated for use by any entity other than Smart City.

14

67.      Smart City was able to discover the above referenced breaches either directly from the various entities, through emails, or by reviewing public records.  It is believed that discovery will reveal other breaches by Defendants, including through communications with Michael Pegues, Mayor Richard Irvin, Marty Lyons, David Dibo, and others from the City of Aurora, Illinois, as well as Joseph Place, Aidan Kahl, Avinash Patwardan, and entities such as Jacobs Engineering, and Nokia, among others.

68.      Based upon a review of Smart City emails, it is believed that Defendants are working with Sandeep Taxali, Aidan Kahl, and Campbell Patterson.

### Meridiam's and OnLight Aurora's Non-Disclosure Agreements

69.      Meridiam and Smart City entered into a "Smart City Capital, LLC Project Non-Disclosure Agreement dated May 31, 2020 (the "Meridiam NDA").  [A copy of the Meridiam NDA is attached as **Exhibit "I"**].  The Meridiam NDA was signed by Bhardwaj on behalf of Smart City, and by Jamie Rubin and Olivier Garnier on behalf of Meridiam.  Pursuant to the Meridiam NDA, Meridiam was obligated to maintain the confidentiality of all of Smart City's proprietary information that it conveyed to Meridiam in connection with potential transactions, including those listed on listed on Schedule A, which included the Aurora, Illinois transaction described above, as well as other projects.  The Meridiam NDA expressly stated that Meridiam agreed not to use Smart City's proprietary information "for its own use or any other purpose other than to carry out discussions concerning, and the undertaking, of the Relationship."  See section 3 of Meridiam NDA.  In addition, the Meridiam NDA contained a "Non-Circumvention" provision (section 5), which prohibited Meridiam from using Smart City's proprietary information "to the detriment" of Smart City and from usurping the business opportunities that were the subject of the parties' discussions.  Meridiam breached those obligations by knowingly using Smart City's confidential

15

information to launch its project without Smart City's involvement, in multiple transactions, with the active assistance of the other Defendants in this case.

70.     OnLight Aurora and Smart City entered into a "Mutual Non-Disclosure Agreement" dated August 20, 2020 (the "OnLight Aurora MNDA."). [A copy of the OnLight Aurora MNDA is attached as **Exhibit "J"**]. The OnLight Aurora MNDA was signed by Bhardwaj on behalf of Smart City and by Pegues on behalf of OnLight Aurora. Pursuant to the OnLight Aurora MNDA, OnLight Aurora was obligated to maintain the confidentiality of all of Smart City's confidential information that it conveyed to OnLight Aurora in connection with the potential Aurora, Illinois transaction described above. The OnLight Aurora MNDA expressly stated that it was restricted to using Smart City's confidential information only "for the purpose of considering whether to enter into a business transaction" with Smart City. OnLight Aurora breached that obligation by knowingly using Smart City's confidential information to launch its project without Smart City's involvement, with the active assistance of the other Defendants in this case.

71.     Smart City has fulfilled all conditions precedent to the filing of this action, or such conditions have been excused or waived.

72.     Smart City has retained the undersigned law firm to prosecute this action and has agreed to pay it reasonable attorneys' fees and costs.

### Count I – Misappropriation of Trade Secrets Under Florida's Uniform Trade Secrets Act (Against All Defendants)

73.     Smart City restates and realleges paragraphs 1 through 72 as fully set forth herein.

74.     All Defendants had access to Smart City's confidential trade secret information described above.

75.     Smart City's confidential and proprietary information constitutes a "trade secret" under Fla. Stat. § 668.002(4). It derives independent economic value, actual or potential, from not

being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.  Further, such information is the subject of efforts that are reasonable under the circumstances to maintain its confidentiality and secrecy. Smart City takes reasonable steps as part of its ongoing standard operating procedures to maintain the confidential nature of this information.

76.     Defendants have misappropriated Smart City's trade secrets through improper means, as described above.

77.     Defendants' misconduct has caused Smart City to suffer damages.

78.     Pursuant to Fla. Stat. § 688.003, the Court is empowered to enjoin both actual and threatened misappropriation.

79.     Defendants' acts of misappropriation were willful and malicious.

80.     Defendants have utilized and are continuing to utilize Smart City's confidential, proprietary, and trade secret information to solicit Smart City's existing and prospective customers.   In doing so, Defendants are maliciously and willfully using misappropriated confidential, proprietary, and trade secret information to their own advantage in direct competition with Smart City.

81.     As a result of Defendants' misappropriation and use of the confidential, proprietary and trade secret information, Defendants have violated Fla. Stat. § 688.001 et seq., Florida's Uniform Trade Secrets Act.

82.     Defendants' actions have caused and will continue to cause Smart City irreparable harm if not permanently enjoined.  Smart City has no adequate remedy at law.  Therefore, in addition to an award of damages that it is able to compute, including lost profits, Smart City seeks

the entry of a permanent injunction to prevent the continuing unauthorized use and disclosure of its trade secrets.

83.     Therefore, Smart City requests that the Court enter judgment against Defendants, awarding Smart City damages, permanent injunctive relief, attorneys' fees pursuant to Fla. Stat. § 688.005, prejudgment interest, costs, and all other relief that is just and proper.   Smart City reserves its right to seek leave to amend pursuant to Fla. Stat. § 768.72 to seek exemplary damages under Fla. Stat. § 688.004(2).

### Count II – Breach of Contract Against Bhardwaj
### (Breach of Bhardwaj Non-Competition Agreement)

84.     Smart City restates and realleges paragraphs 1 through 72 as fully set forth herein.

85.     The Bhardwaj Non-Competition Agreement is a binding, enforceable contract containing certain restrictive covenants both during and surviving the termination of Bhardwaj's Managing Partner role with Smart City.

86.     The Bhardwaj Non-Competition Agreement's restrictions are supported by legitimate business interests that justify the restrictions including, but not limited to, protection of reasonable competitive business interests, trade secrets, confidential business information, and substantial relationships with existing and prospective customers.

87.     The Bhardwaj Non-Competition Agreement required Bhardwaj to refrain from competing with Smart City while working for Smart City and for a period of two (2) years following the termination of his role with the company.

88.     The Bhardwaj Non-Competition Agreement also required Bhardwaj to refrain from soliciting customers and potential customers of Smart City.

89.     Additionally, the Bhardwaj Non-Competition Agreement required Bhardwaj to retain in confidence all of Smart City's trade secret, confidential and proprietary information

accessed during his time as a Managing Director for Smart City, and to return all such information to Smart City upon termination of his role for the company.

90.     Bhardwaj breached the Bhardwaj Non-Competition Agreement by the conduct alleged above.

91.     Bhardwaj remains in possession of Smart City's trade secret, confidential, and proprietary data that he obtained while employed by Smart City, and is using such information to directly compete with Smart City.

92.     Bhardwaj's breaches of the Bhardwaj Non-Competition Agreement are ongoing and will cause irreparable harm to Smart City if not permanently enjoined.

93.     An injunction in this case will serve the public interest in favor of enforcement of the valid and reasonable restrictive covenants.

94.     Smart City  is entitled to a permanent injunction against Bhardwaj.

95.     Bhardwaj's actions have caused and will continue to cause Smart City irreparable harm if not permanently enjoined.  Smart City has no adequate remedy at law.  Therefore, in addition to an award of damages that it is able to compute, including lost profits, Smart City seeks the entry of a permanent injunction to prevent the continuing unauthorized use and disclosure of its trade secrets.

96.     The breaches of the Bhardwaj Non-Competition Agreement have also caused damages to Smart City.

97.     Therefore, Smart City requests that the Court enter judgment against Bhardwaj awarding Smart City compensatory and consequential damages, permanent injunctive relief, prejudgment interest, costs, and all other relief that is just and proper.

**Count III – Breach of Contract Against Sanford and Sag Harbor**
**((Breach of Sag Harbor NDA)**

98.    Smart City restates and realleges paragraphs 1 through 72 as fully set forth herein.

99.    The Sag Harbor NDA is a binding, enforceable contract containing restrictive covenants that survive the termination of Sanford's role with Smart City.

100.    The Sag Harbor NDA's restrictions are supported by legitimate business interests that justify the restrictions including, but not limited to, protection of reasonable competitive business interests, trade secrets, confidential business information, and substantial relationships with specific existing and prospective customers.

101.    The Sag Harbor NDA required Sag Harbor and its principal, Sanford, to retain in confidence all of Smart City's trade secret, confidential and proprietary information accessed during his time as a consultant for Smart City, and to return all such information to Smart City upon termination of his role for the company.

102.    Sag Harbor and Sanford breached the Sanford Non-Competition Agreement by engaging in the conduct alleged above.

103.    Sag Harbor and Sanford continue to possess and use Smart City's trade secret, confidential, and proprietary data, and are now directly competing with Smart City by utilizing its trade secrets and other proprietary information.

104.    Sag Harbor's and Sanford's breaches of the Sanford Non-Competition Agreement are ongoing and will cause irreparable harm to Smart City if not permanently enjoined.

105.    The entering of an injunction in this case will serve the public interest in favor of enforcement of the valid and reasonable restrictive covenants.

106.    Smart City is entitled to a permanent injunction against Sanford prohibiting him from using any of Smart City's misappropriated trade secrets and confidential and propriety information.

107.    Stanford's and Sag Harbor's actions have caused and will continue to cause Smart City irreparable harm if not permanently enjoined.  Smart City has no adequate remedy at law. Therefore, in addition to an award of damages that it is able to compute, including lost profits, Smart City seeks the entry of a permanent injunction to prevent the continuing unauthorized use and disclosure of its trade secrets.

108.    Stanford's breaches of the Sag Harbor NDA have caused damages to Smart City.

109.    Therefore, Smart City requests that the Court enter judgment against Sag Harbor and Sanford, awarding Smart City compensatory and consequential damages, permanent injunctive relief, prejudgment interest, costs, and all other relief that is just and proper.

### Count IV – Breach of Fiduciary Duty (Against Bhardwaj and Sanford)

110.    Smart City restates and realleges paragraphs 1 through 72, inclusive.

111.    Defendants Bhardwaj and Sanford owed fiduciary duties to Smart City by virtue of: a) their high-level positions and responsibilities; b) their duties as agents of Smart City to act on behalf of Smart City within the scope of their employment or agency; c) their agreement not to disclose Smart City's confidential information and not to use such information for their personal gain; and d) the trust reposed in them by Smart City's member, which Defendants accepted.

112.    Defendants breached their fiduciary duties to Smart City.

113.    Defendants' breaches have caused Smart City to suffer damages.

114.    Defendants engaged in willful misconduct, which constituted a willful and wanton disregard of Smart City's rights.

115.     Defendants' actions have caused and will continue to cause Smart City irreparable harm if not permanently enjoined. Smart City has no adequate remedy at law.  Therefore, in addition to an award of damages that it is able to compute, including lost profits, Smart City seeks the entry of a permanent injunction to prevent the continuing unauthorized use and disclosure of its trade secrets.

116.     Therefore, Smart City requests that the Court enter judgment against Defendants Bhardwaj and Sanford, awarding Smart City consequential damages, including lost profits, compensatory damages, permanent injunctive relief, prejudgment interest, costs, and all other relief that is just and proper.  Smart City reserves its right to seek leave to amend pursuant to Fla. Stat. § 768.72 to seek punitive damages.

### Count V – Breach of Duty of Loyalty (Against Bhardwaj and Sanford)

117.     Smart City restates and realleges paragraphs 1 through 72, inclusive.

118.     Defendants Bhardwaj and Sanford owed Smart City a duty of loyalty, which included an obligation not to engage in disloyal acts while employed or engaged by Smart City in anticipation of their future competition.

119.     Defendants breached their duties of loyalty by, among other acts, operating their own competing company while employed or engaged by Smart City, diverting Smart City's business to their own companies, and using Smart City's proprietary and confidential information to divert business from Smart City to their own companies.

120.     Defendants' misconduct has caused Smart City to suffer damages.

121.     Defendants engaged in willful misconduct, which constituted willful and wanton disregard of Smart City's rights.

122.    Defendants' actions have caused and will continue to cause Smart City irreparable harm if not permanently enjoined.  Smart City has no adequate remedy at law.  Therefore, in addition to an award of damages that it is able to compute, including lost profits, Smart City seeks the entry of a permanent injunction to prevent the continuing unauthorized use and disclosure of its trade secrets.

123.    Therefore, Smart City requests that the Court enter judgment against Defendants Bhardwaj and Sanford, awarding Smart City consequential damages, including lost profits, compensatory damages, prejudgment interest, costs, and all other relief which is just and proper. Smart City reserves its right to seek leave to amend pursuant to Fla. Stat. § 768.72 to seek punitive damages.

### Count VI – Tortious Interference with Contracts
### (Against Defendants Bhardwaj, Sanford, Bidwell, DIG, DICG, and Meridiam)

124.    Smart City restates and realleges paragraphs 1 through 72 as fully set forth herein.

125.    Smart City had contracts in place with a number of cities as delineated above.

126.    Defendants Bhardwaj, Sanford, Bidwell, DIG, DICG, and Meridiam intentionally took advantage of their roles with Smart City to interfere with Smart City's contractual relationships with the cities identified above for their own benefit and to the detriment of Smart City.

127.    Defendants interfered with the contracts Smart City had in place and the interference was unjustified.

128.    As a result of Defendants' tortious inference with Smart City's contractual relationships, Smart City has suffered, and continues to suffer, damages, including lost profits and loss of goodwill.

129.     Defendants' interference is continuing and will continue to harm Smart City unless permanently enjoined.

130.     Defendants' actions have caused and will continue to cause Smart City irreparable harm if not permanently enjoined.  Smart City has no adequate remedy at law.  Therefore, in addition to an award of damages that it is able to compute, including lost profits, Smart City seeks the entry of a permanent injunction to prevent the continuing unauthorized use and disclosure of its trade secrets.

131.     Therefore, Smart City requests that the Court enter judgment against Defendants, awarding Smart City compensatory and consequential damages, permanent injunctive relief, prejudgment interest, costs, and all other relief that is just and proper.  Smart City reserves its right to seek leave to amend pursuant to Fla. Stat. § 768.72 to seek punitive damages.

### Count VII – Tortious Interference with Advantageous Business Relationships
### (Against Defendants Bhardwaj, Sanford, Bidwell, DIG, DICG, and Meridiam)

132.     Smart City restates and realleges paragraphs 1 through 72 as fully set forth herein.

133.     Smart City had, and continues to have, advantageous business relationships with its customers and potential business partners.  Defendants had access to information demonstrating the advantageous business relationships existing between Smart City and the cities and other clients with which it conducted business, as described above.

134.     Defendants intentionally took advantage of their roles with Smart City to interfere with Smart City's business relationships with its customers, business partners, and potential business partners for their own benefit and to the detriment of Smart City.

135.     Defendants interfered with the advantageous business relationships enjoyed by Smart City and their interference was unjustified.

136.     As a result of Defendants' tortious inference with Smart City's advantageous business relationships, Smart City has suffered, and continues to suffer, lost profits and loss of goodwill.

137.     Defendants' interference is continuing and will continue to harm Smart City unless permanently enjoined.

138.     Defendants' actions have caused and will continue to cause Smart City irreparable harm if not permanently enjoined.  Smart City has no adequate remedy at law.  Therefore, in addition to an award of damages that it is able to compute, including lost profits, Smart City seeks the entry of a permanent injunction to prevent the continuing unauthorized use and disclosure of its trade secrets.

139.     Therefore, Smart City requests that the Court enter judgment against Defendants, awarding Smart City compensatory and consequential damages, permanent injunctive relief, prejudgment interest, costs, and all other relief that is just and proper.  Smart City reserves its right to seek leave to amend pursuant to Fla. Stat. § 768.72 to seek punitive damages.

### Count VIII – Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*  ("FDUTPA") (Against All Defendants)

140.     Smart City restates and realleges paragraphs 1 through 72, inclusive.

141.     Defendants engaged in, and continue to engage in,  unfair methods of competition, unconscionable acts and practices, and unfair practices and acts in the conduct of their trade, in violation of Fla. Stat. § 501.204.

142.     These unfair methods, practices, and acts include, but are not limited to: a) Defendants' misappropriation and use of Smart City's trade secrets and other confidential and proprietary information, including by Bhardwaj, Sanford, and Bidwell when they were employed or retained by Smart City, and after their employment and contractor relationships terminated, to

25

poach Smart City's clients or prospective clients and to unfairly compete in the same industry; b) Bhardwaj and Sanford breaching their fiduciary duties and engaging in acts of disloyalty before leaving Smart City's employ by using its resources to advance their own personal financial interests; c) their diverting of Smart City's business for their own personal financial gain; and d) Defendants violating their obligations to maintain as confidential Smart City's trade secrets and other confidential and proprietary information.

143.    Defendants' conduct constitutes unfair methods of competition and unfair acts and practices under Fla. Stat. § 501.204.

144.    Defendants' conduct has caused Smart City to suffer damages.

145.    Defendants' actions have caused and will continue to cause Smart City irreparable harm if not permanently enjoined.  Smart City has no adequate remedy at law.  Therefore, in addition to an award of damages that it is able to compute, including lost profits, Smart City seeks the entry of a permanent injunction to prevent the continuing unauthorized use and disclosure of its trade secrets.

146.    Therefore, Smart City requests that the Court enter judgment against Defendants, awarding Smart City damages, injunctive relief pursuant to Fla. Stat. § 501.211(1), attorney's fees pursuant to Fla. Stat. § 501.211(2) and § 501.210(5), prejudgment interest, costs, and all other relief that is just and proper.

### Count IX – Breach of Contract Against Meridiam
### (Breach of Meridiam MNDA)

147.    Smart City restates and realleges paragraphs 1 through 72 as fully set forth herein.

148.    The Meridiam NDA is a binding and enforceable contract.

149.    Meridiam breached the Meridiam NDA by engaging in the conduct alleged above.

150.    Meridiam's breaches of the Meridiam NDA have caused Smart City to incur damages.

151.    Defendant's actions have caused and will continue to cause Smart City irreparable harm if not permanently enjoined.  Smart City has no adequate remedy at law.  Therefore, in addition to an award of damages that it is able to compute, including lost profits, Smart City seeks the entry of a permanent injunction to prevent the continuing unauthorized use and disclosure of its trade secrets.

152.    Therefore, Smart City requests that the Court enter judgment against Meridiam, awarding Smart City compensatory and consequential damages, permanent injunctive relief, prejudgment interest, costs, and all other relief that is just and proper.

### Count X – Breach of Contract Against OnLight Aurora
### (Breach of OnLight Aurora MNDA)

153.    Smart City restates and realleges paragraphs 1 through 72 as fully set forth herein.

154.    The OnLight Aurora MNDA is a binding and enforceable contract.

155.    OnLight Aurora breached the OnLight Aurora MNDA by engaging in the conduct alleged above.

156.    OnLight Aurora's breaches of the OnLight MNDA have caused Smart City to incur damages.

157.    Defendant's actions have caused and will continue to cause Smart City irreparable harm if not permanently enjoined.  Smart City has no adequate remedy at law.  Therefore, in addition to an award of damages that it is able to compute, including lost profits, Smart City seeks the entry of a permanent injunction to prevent the continuing unauthorized use and disclosure of its trade secrets.

158.     Therefore, Smart City requests that the Court enter judgment against OnLight Aurora, awarding Smart City compensatory and consequential damages, permanent injunctive relief, prejudgment interest, costs, and all other relief that is just and proper.

**Count XI – Misappropriation of Trade Secrets Under the Delaware Uniform Trade Secrets Act, 6 Del. C. § 2001, *et seq.***

**(Alternative Claim Against Defendants Sag Harbor and Meridiam)**

159.     Smart City restates and realleges paragraphs 1 through 72 as fully set forth herein.

160.     Defendants had access to Smart City's confidential trade secret information described above.

161.     Smart City's confidential and proprietary information constitutes a "trade secret" under 6 Del. C. § 2001 (4).  It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.  Further, such information is the subject of efforts that are reasonable under the circumstances to maintain its confidentiality and secrecy.  Smart City takes reasonable steps as part of its ongoing standard operating procedures to maintain the confidential nature of this information.

162.     Defendants have misappropriated Smart City's trade secrets through improper means, as described above.  Defendants were under a duty to maintain the confidentiality of Smart City's trade secrets and induced Smart City through misrepresentations and material omissions to disclose its trade secrets to them.

163.     Defendants also knew or had reason to believe that Smart City's trade secrets were acquired by improper means.  Defendants  knew or had reason to know that their  knowledge of the trade secret was:  a) derived from or through a person who had utilized improper means to acquire it; b) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its

use; or c) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

164.    Defendants' misconduct has caused Smart City to suffer damages.

165.    Pursuant to 6 Del. C. § 2002(a) , the Court is empowered to enjoin both actual and threatened misappropriation.

166.    Defendants have utilized and are continuing to utilize Smart City's confidential, proprietary, and trade secret information to solicit Smart City's existing and prospective customers.   In doing so, Defendants are maliciously and willfully using misappropriated confidential, proprietary, and trade secret information to their own advantage in direct competition with Plaintiff.

167.    As a result of Defendants' misappropriation and use of the confidential, proprietary and trade secret information, Defendants have violated the Delaware Uniform Trade Secrets Act.

168.    Defendants' actions have caused and will continue to cause Smart City irreparable harm if not permanently enjoined.   Smart City has no adequate remedy at law.   Therefore, in addition to an award of damages that it is able to compute, including lost profits, Smart City seeks the entry of a permanent injunction to prevent the continuing unauthorized use and disclosure of its trade secrets.

169.    Smart City has filed this action within three years after the Defendants' misappropriation was discovered or within three years by the exercise of reasonable diligence the misappropriation should have been discovered.

170.    Therefore, Smart City requests that the Court enter judgment against Defendants, awarding Smart City damages, permanent injunctive relief, attorneys' fees pursuant to 6 Del. C. § 2004, prejudgment interest, costs, and all other relief that is just and proper.   Smart City reserves

its right to seek leave to amend pursuant to Fla. Stat. § 768.72 to seek exemplary damages under

6 Del. C. § 2003(b).

WHEREFORE, Smart City demands judgment against Defendants for:

i.   Compensatory and consequential damages, interest, and costs, in an amount to be determined at trial;

ii.  permanent injunctive relief prohibiting Defendants and all those acting in concert with them, directly or indirectly, from using any of Smart City's trade secrets and its other confidential and proprietary information;

iii. Smart City's reasonable attorneys' fees and costs pursuant to Fla. Stat. §§ 688.005, 501.211(2), 501.210(5), 542.335(1)(k) and 6 Del. C. § 2004 ; and

iv.  such other relief as the Court deems just and proper.

## Demand for Jury Trial

Smart City demands trial by jury of all issues so triable as of right.

Dated: July 18, 2023

Respectfully submitted,

GRAYROBINSON, P.A.
/ Scott L. Cagan, Esq.
**SCOTT L. CAGAN, ESQ.**
Florida Bar No.: 822681
Scott.cagan@gray-robinson.com
GrayRobinson, P.A.
401 E. Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL  33301-4210
Phone: 954-761-8111

*Counsel for Plaintiff, Smart City Capital, LLC*

/17014/2#50443631 v1

# EXHIBIT "A"

**To: Rahul Bhardwaj**          **Date: 5-11-2019**

**From: Oscar Bode**

**Re: SCC, Managing Director, North America Position, Offer Letter**

Dear Rahul:

As you know, Smart City Capital, a Delaware Limited Liability Company ("**SCC**"), is being invested by a new investor, ██████████████████████████████████████████████████████████████ I am pleased to offer you the position of Managing Director of North America, effective the 24th of May, 2019, via this professional advisory agreement ("Agreement"). This Agreement becomes effective upon the closing and initial funding of the █████ investment on the Closing Date. If you accept this offer, the contingencies of this offer are satisfied, and the █████ Closing Date is executed, you will commence the MD N. America role with SCC, on the following terms.

**Your Position**

You will initially have the title of Managing Director of North America as previously noted, reporting to Oscar Bode. SCC may, from time to time, at its sole discretion, change your title, grade, duties and the person to whom you report. SCC shall make reasonable efforts to not decrease your title set forth herein. Notwithstanding the foregoing, only a reduction in grade shall be subject to the definition of Good Reason (as defined below).

**Compensation and Benefits**

You will receive a monthly 1099 based compensation of ██████████████████████████████████ on an annualized basis, less all applicable deductions and withholding, if applicable. You will also receive a variable compensation based on specific project and complexity, over and above the aforementioned based amount, for closed and funded projects. Loss or cancelled projects may result in the reversal of variable amounts paid.

████████████████████████████████████████████████████████

**Duration of Employment**

**Term of this Agreement.** You agree to remain actively in the position with SCC while the Agreement is in effect and not terminated by you or SCC. Nevertheless, either you or SCC may terminate this Agreement / position at any time for any reason, with or without "Cause" (as defined below), by giving written notice of such termination, subject to the terms specified below. Please be aware that in executing this Agreement, SCC is relying on your commitment to remain actively engaged in the role of MD North America and your compliance with our Code of Business Conduct (COBC), dated 9-30-2016, which was provided to you.

Upon the termination of your Agreement with SCC at any time for any reason, unless it is for a breach of our COBC and/or you resign, you will be paid your compensation amount through your date of termination.

**Termination for Cause or Termination without Good Reason.** If your Agreement with SCC is terminated for "Cause" (as defined below) or you terminate your Agreement without "Good Reason" (as defined below) at any time, you will be entitled to the Accrued Compensation. All of your benefits and vesting, if any, would terminate. SCC would have no obligation to pay you, and you would have no right to, any severance.



Case 0:21-cv-60706-XXXX   Document 1-1   Entered on FLSD Docket 03/31/2021 : Page 3 of 7

A termination for **"Cause"** will mean a termination for any of the following reasons: (i) your continued material failure to perform your duties to SCC after there has been delivered to you a written demand for performance which describes the specific material deficiencies in your performance and the specific manner in which your performance must be improved, in accordance with the respective performance management plan, and which provides forty (40) business days from the date of notice, or the amount of time specified in any applicable performance management plan, whichever is greater, to remedy such performance deficiencies; (ii) your engaging in an act of willful misconduct that has had or will have a material adverse effect on SCC's reputation or business; (iii) your being convicted of, or a plea of no contest to, a felony; (iv) your committing an act of fraud against, or willful material misappropriation of intellectual or confidential property belonging to, SCC or (v) your material breach of this agreement, the attached Non-Competition Agreement, SCC standard form of conflict of interest agreement or SCC's standard form of Code of Business Conduct and proprietary information and inventions agreement (**"COBC"**); provided, however, that if such breach is curable, you shall have the opportunity to cure such breach within thirty (30) days following written notice of such breach from SCC. SCC will provide you with written notice of the reason for termination in the case of any termination for "Cause" or violation of any SCC policy, Agreement or COBC, at any time.

A termination for **"Good Reason"** will mean you resign your employment after (i) a reduction in your Grade (other than a change or reduction in grade that applies to your entire business unit); (ii) your relocation by SCC or without your express written consent to a facility or location more than fifty (50) miles from your then current location in one or more steps; or (iii) your then current annual base compensation is reduced by SCC (other than an equivalent percentage reduction in annual base salaries that applies to your entire business unit); provided, however, that in each case above, you must first give SCC an opportunity to cure any of the foregoing within thirty (30) days following delivery to SCC of a written explanation specifying the specific basis for your belief that you are entitled to terminate your employment for Good Reason.

For purposes of this agreement, **"Permanent Disability"** means your inability to engage in any substantial gainful activity by reason of any medically diagnosed physical or mental impairment which is expected to result in death or has lasted or can be expected to last for a continuous period of twelve (12) months or more. A determination of such Permanent Disability will be made by a physician reasonably acceptable to SCC.

If the SCC or you terminate your Agreement, unless for "Cause" or violation or our policy or COBC at any time after the date two (2) years following the Execution Date, you will be paid the Accrued Compensation as set forth above. All of your benefits and Unit vesting, if any, would terminate. SCC would have no obligation to pay you, and you would have no right to, any severance.

**Conflicts of Interest**

You agree that during your Agreement with SCC you will not engage in any other employment or business-related activity unless you obtain prior written approval from the CEO of SCC. You further agree that you have disclosed to SCC all of your existing employment and/or business relationships, including, but not limited to, any consulting or advising relationships, outside directorships, investments in privately held companies, and any other relationships that may create a conflict of interest.

**Miscellaneous**

At all times during your employment, you agree to abide by SCC's policies, COBC and procedures, as such policies and procedures may be in effect from time to time. However, if any policy or procedure conflicts with any express term of this agreement, this agreement will control.

You agree that there were no promises or commitments made to you regarding your position with SCC except as set forth in this agreement. Except as provided for herein, this agreement supersedes and replaces (i) any prior verbal or written agreements between you and SCC and (ii) any prior verbal or written agreements between you and SCC relating to the subject matter hereof, including, but not limited to, any and all prior agreements.

Upon the Closing Date, this agreement; the COBC, PIIA; the Arbitration Agreement; the Conflict of Interest Agreement; the Non-Competition Agreement; will be the entire agreement relating to your Agreement with SCC.   In addition, any confidential/proprietary/trade secrets information, models, strategy, business relationships and inventions agreement(s) between you and SCC, or any predecessor thereto, will remain in effect as it pertains to subject matters existing prior to and after execution this Agreement.

This agreement may be amended or altered only in a dated document signed by you and SCC CEO. or his/her designee. No waiver of any term or provision of this agreement will be valid unless such waiver is in a writing signed by the party against whom enforcement of the waiver is sought. The waiver of any term or provision of this agreement will not apply to any subsequent breach of this agreement.

This agreement will be construed and interpreted in accordance with the laws of the State of Delaware. Each of the provisions of this agreement is severable from the others, and if any provision hereof will be to any extent unenforceable, it and the other provisions will continue to be enforceable to the full extent allowable, as if such offending provision had not been a part of this agreement.

Sincerely,

Smart City Capital, LLC
a Delaware Limited Liability Company

By:   *Oscar Bode*
_____
Name: Oscar Bode

Title: CEO

I agree to the terms and conditions in this offer.

Date:
_____        _____
5-11-2019                                                        Rahul Bhardwaj

**[SIGNATURE PAGE TO AGREEMENT]**

**Exhibit A**

**SCC NON-COMPETITION AGREEMENT**

This NON-COMPETITION AGREEMENT (this "**Agreement**"), dated May 11, 2019, is made by and between Rahul Bhardwaj (the "Advisor") and Smart City Capital, LLC., a Delaware Limited Liability Company ("**SCC**").

**BACKGROUND**

Advisor and SCC agree that, SCC's business includes the design, development, manufacture, production, marketing and sales of products and services related to the smart city, IOT and outcome-based funding model business (as defined below) throughout each of the fifty states of the United States, Canada and other parts of the world (the "**Restrictive Territory**"). Advisor represents and understands that, following the execution of this Agreement, Advisor will be conducting SCC's   business in the Restrictive Territory.

NOW, THEREFORE, in consideration of the foregoing premises and for good and valuable consideration, receipt of which is hereby acknowledged, Advisor, intending to be legally bound, agrees as follows:

1. **Agreement Not to Compete**. During the Restrictive Period (as defined below), Advisor agrees that he will not, as an employee, agent, consultant, advisor, independent contractor, individual, general partner, officer, director, Advisor, investor, lender or guarantor of any corporation, partnership or other entity, or in any other capacity directly or indirectly:

(a) (I) participate or engage with any  SCC client or prospect as well as in the design, development, manufacture, production, marketing, sale or servicing of any product, or the provision of any service, that directly relates to (1) enterprise or commercial (business-to-business or public sector / cities) or enterprise-to-consumer communications and collaborations applications that include and SCC solutions, services or funding models our sources. or (II) render any services to any SCC client, prospect or entity engaged in the design, development, manufacture, production, marketing, sale or servicing of any product, or the provision of any service, for (1) enterprise or commercial (business-to-business) or enterprise-to-consumer or public sector / cities (hereafter referred to as the "**Business**") in the Restrictive Territory; or

(b) permit Advisor's name to be used in connection with a client, partner, funder or business, which is competitive or substantially similar to the SCC Business.

Notwithstanding the foregoing, Advisor may (i) own, directly or indirectly, solely as an investment, up to one percent (1%) of any class of "publicly traded securities" of any business that is competitive or substantially similar to the Business or (ii) work for a division, entity or subgroup of any of such companies that engages in the Business so long as such division, entity or subgroup does not engage in the SCC Business, the Restrictive Territory, eco-system or funding partners, clients or Prospects. The term "publicly traded securities" shall mean securities that are traded on a national securities exchange or listed on any NASDAQ Stock Market.

For purposes of this Agreement, the restrictive period (referred to herein as the "**Restrictive Period**") shall commence on the termination or resignation date and shall continue until the second (2nd) anniversary of said date.

2. **Acknowledgment**. Advisor hereby acknowledges and agrees that:

(a) this Agreement is necessary for the protection of the legitimate business interests of SCC;

(b) the execution and delivery and continuation in force of this Agreement is a material inducement for SCC to execute the Agreement and is a mandatory condition precedent to this Agreement.

(c) the scope of this Agreement in time, geography and types and limitations of activities restricted is reasonable;

(d) Advisor has no intention of competing with SCC within the area and the time limits set forth in this Agreement; and

3. **Remedy**. Advisor acknowledges and agrees that (a) the rights of Advisor under this Agreement are of a specialized and unique character and that immediate and irreparable damage will result to SCC if Advisor fails to or refuses to perform his

Case 0:21-cv-60706-XXXX   Document 1-1   Entered on FLSD Docket 03/31/2021   Page 6 of 7



obligations under this Agreement and (b) SCC may, in addition to any other remedies and damages available, seek an injunction in a court of competent jurisdiction to restrain any such failure or refusal. No single exercise of the foregoing remedies shall be deemed to exhaust SCC's right to such remedies, but the right to such remedies shall continue undiminished and may be exercised from time to time as often as SCC may elect. Advisor represents and warrants that his expertise and capabilities are such that his obligations under this Agreement (and the enforcement thereof by injunction or otherwise) will not prevent him from earning a livelihood.

4. **Severability.** If any provisions of this Agreement as applied to any part or to any circumstances shall be adjudged by a court to be invalid or unenforceable, the same shall in no way affect any other provision of this Agreement, the application of such provision in any other circumstances, or the validity or enforceability of this Agreement. Advisor and Advisor intend this Agreement to be enforced as written. If any provision, or part thereof, however, is held to be unenforceable because of the duration thereof or the area covered thereby, all parties agree that the court making such determination shall have the power to reduce the duration and/or area of such provision, and/or to delete specific words or phrases and in its reduced form such provision shall then be enforceable.

5. **Amendment**. This Agreement may not be amended except by an instrument in writing signed by SCC's CEO or his or her designee, and Advisor.

6. **Waiver**. No waiver of any nature, in any one or more instances, shall be deemed to be or construed as a further or continued waiver of any breach of any other term or agreement contained in this Agreement.

7. **Headings**. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

8. **Governing Law**. This Agreement shall be construed and interpreted, and its performance shall be governed by the laws of the State of Delaware without regard to conflicts of law principles of any jurisdiction.

9. **Entire Agreement**. This Agreement constitutes the entire agreement of the parties with respect to the subject matter of this Agreement and supersedes all prior agreements and undertakings, both written and oral, between the parties, or any of them, with respect to the subject matter of this Agreement.

**Signature Page To Follow**

IN WITNESS WHEREOF, SCC and Advisor have executed this Agreement on the day and year first above written.

ADVISOR

By: _____
                    **Signature**


_____
Rahul Bhardwaj
**Name (Please Print)**


Smart City Capital, LLC

a Delaware Limited Liability Company

By: _____
         Name: Oscar Bode
         Title: CEO

**[SIGNATURE PAGE TO NON-COMPETITION AGREEMENT]**

# EXHIBIT "B"

## Smart City Capital, Mutual Non-Disclosure, Non-Circumvention Agreement

This Mutual Non-Disclosure, Non-Circumvention Agreement (the "Agreement") is made and entered into between Smart City Capital, LLC (the "Company") and "Recipient" identified below.

Recipient: **(INSERT LEGAL NAME AND ADDRESS)**

The Effective Date of this Agreement is: _____12/18/2018_____

**1. Purpose.** The Company and Recipient (the "**Parties**") wish to enter into and/or continue discussions of mutual interest regarding **Projects and Clients Associated with the Company and Recipient** (the "**Relationship**"); in connection with which, the Company and Recipient have disclosed and/or may further disclose certain information, including its Proprietary Information (as defined below). This Agreement is intended to allow the Parties to interact with respect to the Relationship while protecting the Company and Recipient from the subsequent unauthorized use or disclosure of certain information, including Proprietary Information (which includes Proprietary Information previously disclosed to Recipient or Company). Neither party represents or guarantees that a successful business transaction will result from the discussions and any agreement is subject to a written definitive agreement between the Parties.

**2. Definition of Proprietary Information.** " Proprietary Information " shall mean all business-confidential, proprietary and trade secret information and materials, whether in written, oral, electronic or another format, whether intentionally disclosed between parties or observed inadvertently either party, including, but not limited to, the following: (a) business, technical, financial or other operational information and materials; (b) information of a confidential, sensitive, non-public or personal nature, including information belonging to a third party or for which one party owes a duty of confidentiality; (c) trade secrets or proprietary business information, including but not limited to product information, laboratory notebooks, software, inventions, designs, engineering, strategic plans, marketing plans, research, formulae, processes, financial data, budgets, sales, costs and pricing, identities of suppliers or customer lists; (d) any other proprietary or Proprietary Information, including but not limited to any disclosures, materials or communications between the Parties marked "confidential," "proprietary" or similarly marked or, in the case of oral disclosures and communications, identified as such at the time of disclosure or within thirty (30) days of disclosure; or (e) any materials which a reasonable person would recognize from the surrounding facts and circumstances to be proprietary or confidential.

**3. Nondisclosure of Proprietary Information.** The Parties agree not to use any Proprietary Information disclosed in the Relationship for its own use or for any purpose other than to carry out discussions concerning, and the undertaking of, the Relationship. The Parties shall not disclose or permit disclosure of any Proprietary Information of the Company to third parties, other than (where applicable) directors, officers, employees, consultants and agents who are required to have the information in order to perform the Parties' authorized activities in connection with the Relationship. The Parties have had or will have all directors, officers, employees, consultants and agents who have access to Proprietary Information of the Company sign a nondisclosure agreement in content substantially similar to this Agreement. The Parties agree to take all reasonable and necessary measures to protect the secrecy of and avoid disclosure or unauthorized use of Proprietary Information of each party. Such measures shall include, but not be limited to, the highest degree of care that the Recipient utilizes to protect its own Proprietary Information of a similar nature, which shall be no less than reasonable care. Recipient agrees to notify the Company in writing of any actual or suspected misuse, misappropriation or unauthorized disclosure of Proprietary Information of the Company which may come to the Recipient's attention and to cooperate with the Company to stop and prevent such activities.

<u>Exceptions</u>: Notwithstanding the above, the Parties' confidentiality obligations hereunder shall not apply with regard to any Proprietary Information which the respective party can prove: (i) was in the public domain at the time it was disclosed or has entered the public domain through no fault of the respective party; (ii) was known to Either party, without restriction, at the time of disclosure, as demonstrated by files in existence at the time of disclosure; (iii) is disclosed with the prior written approval of the Company; or (iv) is disclosed pursuant to applicable law or the order or requirement of a court, administrative agency, or other governmental body; provided, however, that the Respective party shall provide prompt notice of such court order or requirement to the Company to enable the Company to seek a protective order or otherwise prevent or restrict such disclosure and Respective party's right to disclose such Proprietary Information shall be strictly limited to the extent necessary to comply with such law, order or requirement.

**4. No Duplication; Return of Materials.** The Parties agree, except as otherwise expressly authorized by the respective party, not to make any copies or duplicates of any Proprietary Information. Any materials or documents that have been furnished by either party in connection with the Relationship shall be promptly returned by the respective party, accompanied by all copies of such documentation, within ten (10) days after (a) the Relationship has been rejected or concluded or (b) the written request either party. The Parties may not retain any Proprietary Information or any copies, summaries or notes thereof without written, mutual consent.

**5. Non-Circumvention.** The Parties agree (a) the identity of, and information relating to, any actual or potential customers, clients, or partners to whom one Party introduces the other shall be treated as Proprietary Information of the introducing Party; (b) Recipient agrees, for the entity, their officers, directors, agents, associates, and any related parties, that he will not, directly or indirectly, contact, deal with, or otherwise become involved with any entity or persons introduced, directly or indirectly, by or through Company, its officers, directors, agents, or associates, for the purpose of avoiding payment to Company of profits, fees, or otherwise, without the specific written approval of Company; c) Company agrees, for the entity, their officers, directors, agents, associates, and any related parties, that they will not, directly or indirectly, contact, deal with, or otherwise become involved with any entity or persons introduced, directly or indirectly, by or through Recipient, any officers, directors, agents, or associates, for the purpose of avoiding payment to recipient of profits, fees, or otherwise, without the specific written approval of Recipient.

**6. No Rights Granted.** Nothing in this Agreement shall be construed as granting any right, title or interest with respect to any patent, copyright or other intellectual property right of the Company or the Recipient, nor shall this Agreement grant the Parties any rights in or to the Company or the Recipient's Proprietary Information other than the limited right to review such Proprietary Information solely as expressly set forth in this Agreement.

**7. Term and Termination.** This Agreement shall commence on the Effective Date and terminate upon the earliest to occur of the following: (a) the permanent conclusion of discussions between the Parties without a written definitive agreement, (b) the execution of a written definitive agreement with confidentiality provisions that expressly supersede those set forth in this Agreement, or (c) the mutual written agreement of the Parties. The commitments of each party set forth herein shall survive any termination of this Agreement, and shall continue for so long as the Proprietary Information (or any portion thereof) remains confidential or proprietary.

**8. Assignment, Successors and Assigns.** Recipient may not assign this Agreement without the Company's prior written consent except in connection with a merger, acquisition, reorganization or sale of substantially all of its assets or equity; provided that following any such transaction, this Agreement shall continue to bind all persons and entities who had, have or will have access to the Company's Proprietary Information. Subject to the foregoing, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and permitted assigns of the Parties. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the Parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

**9. Severability**. If one or more provisions of this Agreement are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith. In the event that the parties cannot reach a mutually agreeable and enforceable replacement for such provision, then (a) such provision shall be excluded from this Agreement, (b) the balance of the Agreement shall be interpreted as if such provision were so excluded and (c) the balance of the Agreement shall be enforceable in accordance with its terms.

**10. Relationship Structure**. Nothing in this Agreement shall be construed to constitute an agency, partnership, joint venture, or other similar relationship between the Parties. The Parties may develop consulting, fee sharing, or other types of business arrangements as they move forward in discussions.

**11. Governing Law**. This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Delaware without giving effect to principles of conflicts of law.

**12. Remedies; Indemnification**. The Company and Recipient each agree that the obligations set forth in this Agreement are necessary and reasonable in order to protect the Parties and their business. The Company and Recipient each expressly agree that due to the unique nature of each party's Proprietary Information, monetary damages would be inadequate to compensate the Company for any breach by Recipient of its covenants and agreements set forth in this Agreement. Accordingly, the Company and Recipient each agree and acknowledge that any such violation or threatened violation shall cause irreparable injury to either party and that, in addition to any other remedies that may be available, in law, in equity or otherwise, each party shall be entitled (a) to obtain injunctive relief against the threatened breach of this Agreement or the continuation of any such breach by either party, without the necessity of proving actual damages, and (b) to be indemnified by the respective party from any loss or harm, including but not limited to attorney's fees, arising out of or in connection with any breach or enforcement of the respective party's obligations under this Agreement or the unauthorized use or disclosure of the either party's Proprietary Information.

**13. Amendment and Waiver**. Any term of this Agreement may be amended with the written consent of the Company and Recipient. Any amendment or waiver effected in accordance with this Section shall be binding upon the parties and their respective successors and assigns. Failure to enforce any provision of this Agreement by a party shall not constitute a waiver of any term hereof by such party.

**14. Counterparts**. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument. An executed counterpart may be transmitted via fax or scanned into PDF format and transmitted via email.

**15. Entire Agreement**. This Agreement is the product of both of the parties hereto, and constitutes the entire agreement between such parties pertaining to the subject matter hereof, and merges all prior negotiations and drafts of the parties with regard to the transactions contemplated herein. Any and all other written or oral agreements existing between the parties hereto regarding such transactions are expressly canceled.

**15. Export Control**. Any conditions on the use and disclosure of information as imposed by applicable export control laws and regulations shall be in addition to those imposed herein. Nothing in this Agreement shall be deemed or interpreted to authorize any export for which such laws and regulations require a license or other approval, nor to derogate from the parties' respective obligations to comply with all such laws and regulations. Moreover, the Parties agree: (i) that any technical data or defense service received from either party under this Agreement will be handled in accordance with applicable export laws and regulations, including the International Traffic in Arms Regulations and the Arms Export Control Act; and (ii) that the Parties shall hold each other harmless from all claims, demands, damages, costs, fines, penalties, fees and all other expenses arising from the failure of the receiving party to comply with this section of the Agreement or the export laws or regulations implicated herewith.

**17. Marketing Restriction.** The Parties shall not disclose its relationship with Company clients, or mention the Parties' clients in any way, in their marketing materials, presentations, or press releases without prior mutual written consent.

**17. Headers.** The Headers used in this Agreement are for convenience only and have no legal or interpretive effect.

The Parties have executed this Non-Circumvention, Non-Disclosure Agreement as of the date first above written.

12/18/2018

**RECIPIENT**

By: _James Sanford_ Signature
E663A5A520DA402

Name: James Sanford   Title: MANAGING PARTNER

SAG HARBOR ADVISORS

Smart City Capital

By: _____ Signature

Name: _____   Title: CEO

OSCAR
BOQL

EXHIBIT "C"



EXHIBIT "D"

Are you an Attorney? We need more attorneys in your area. Apply now for membership.



**Promoted**

Are you an Attorney?
We need more attorney.
In your area. Apply now
for membership

Online Master of Laws
Earn your online LLM from
top ranked Pepperdine in
12-24 mos. 22 req'd

Learn more          Learn more

**Michael Bidwell, P.Eng · 3rd**
Managing Partner at Digital Infrastructure Group (DIG)
Greater Toronto Area, Canada · 500+ connections · Contact Info

🔵 Digital Infrastructure Group
🔵 University of Waterloo

**Message**  ···

**People also viewed**

Laurel Murphy · 3rd
Digital and Senior Water Group
Pellp p to formulas across
**Message**

Ben Almond · 3rd
CEO, BEST Canada at DIG Inc S...
**Message**

Rachelle Pinarde, MBA, P.Eng · 3rd
Project Manager
**Message**

Peter Micsi · 1st
Global Mobility
**Message**

Brian R. Edwards · 3rd
Vice President Business of Data
Engineering at BMED North America
**Message**

Show more ⌄

**Activity**
770 followers

Posts Michael created, shared, or commented on in the last 90 days are displayed here.

See all activity

**Experience**

Managing Partner
Digital Infrastructure Group
Feb 2021 - Present · 2 mos
Toronto, Ontario, Canada

Jacobs
3 yrs

Director, Smart Cities
Mar 2018 - Feb 2021 · 2 yrs 4 mos
Toronto, Canada Area

Currently responsible for leading Jacobs Smart Cities Practice in Canada. Helping our clients
achieve their Smart City goals through market leading partnership approaches. Outcome based
smart city solutions are shaping cities and changing lives faster than any other social, cultural, or
market force today. Cities at every size and in every corner of the world are looking to l...see more

Regional Design Leader
Mar 2018 - Dec 2018 · 10 mos
Toronto, Canada Area

Works in close partnership with other Regional Leaders to achieve the business plan and
implement the Design Delivery Strategy for the Buildings and Infrastructure business in the
Canadian Region.

CH2M
7 yrs 7 mos

Project Manager, Manager of Talent
Jun 2017 - Mar 2018 · 1 yr 2 mos
Toronto, Canada Area

Project Manager for complex infrastructure projects. Manager of Talent (Canada Project
Delivery/Technology), Project Services, Engineering & Design: managing resources, forecast
workforce planning, skills and expertise development, and providing team leadership that aligns
with CH2M delivery excellence goals

Design Manager, Operational Leader
Sep 2010 - Jun 2017 · 6 yrs 5 mos
Toronto, Ontario

Professional engineer with experience in facility design leadership, construction contract
administration, and project/design management. He has relevant expertise in hydraulic modeling
wastewater and water treatment, constructability management, multi-discipline design team
coordination and leadership, and capital cost management.

Project Engineer
Stantec
May 2005 - Aug 2010 · 5 yrs 4 mos
Toronto, Ontario

**People you may know**

Ashish Mistry
Managing Partner at B2P Venture Partners
**Connect**

Derek Silver
League Ceremony
**Connect**

Edgar Ndjatou
Community Attorney. distribution and
Enable a DeJure Strategic Signs...
**Connect**

Gary C. Rosen, Esq.
Managing Broker/Owner at Better...
**Connect**

Alena Milano
Project Coordinator SNC
**Connect**

Show more ⌄

**Education**

University of Waterloo
Civil (Environmental) Engineering

**Skills & endorsements**

Project Management · 4
Endorsed by Laurel Murphy, who is highly skilled at   Endorsed by 3 of Michael's colleagues at Jacobs
this

Leadership · 1
Endorsed by 2 of Michael's colleagues at Jacobs

Management · 4
Endorsed by 2 of Michael's colleagues at Jacobs

Show more ⌄

**LEARNING**

Add new skills with these courses

 Construction Management:
Reading Civil Construction...
7,568 Viewers

InfraWorks 2021 Essential
Training
3,503 Viewers

Construction Industry:
Going Digital in the Field
2,503 Viewers

Show more on LinkedIn Learning

**Promoted**

LL.M. Degree
Programs
From ABA Law - Earn
Your LLM Completely
Online With the Apple

High ROI pre-iPO?
It's the "Dark Turn" But
Now You are the Start
Apply for & on
hammann g

Learn more          Learn more

**Interests**

Bruce Katz 🔵
Director at Drexel University
150,114 followers

GHD
237,915 followers

CH2M
847,861 followers

AECOM
1,124,100 followers

Jacobs
1,075,251 followers

Stantec
208,697 followers

See all

LinkedIn

About            Accessibility     Talent Solutions     Questions?          To our language
Community Guidelines   Careers     Marketing Solutions   Visit our Help Center   English (English)
Privacy & Terms ⌄   Ad Choices   Advertising
Sales Solutions   Mobile     Small Business     Manage your account and privacy
Safety Center                                    Go to your Settings.

LinkedIn Corporation © 2021

# EXHIBIT "E"



# EXHIBIT "F"

**Linked in**  Join now  ( Sign in )

Digital Infrastructure Group in Worldwide



## Digital Infrastructure Group

Utilities

Richmond Hill, Ontario · 10 followers

Building infrastructure for the next 100 years.

( Follow )

 View 1 employee

## About us

Digital Infrastructure Group (DIG) is a Master Project Developer & Sponsor of infrastructure projects across the Telecommunications, Broadband (FTTX, PLTE, Wireless), Utilities sectors.

DIG works with both public and private sector partners to execute defined infrastructure projects across North America.

The DIG team are industry leaders across the infrastructure project finance space and specialize in the design, build, operate and financing of large scale infrastructure utility and telecom projects in both the Canada and the US.

| Website | http://www.diginfragroup.com |
| --- | --- |
| Industries | Utilities |
| Company size | 11-50 employees |

| | |
|---|---|
| **Headquarters** | Richmond Hill, Ontario |
| **Type** | Partnership |

## Locations

Primary

W Beaver Creek Rd
Richmond Hill, Ontario L4B, CA
Get directions ⬈

Sag Harbor Rd
East Hampton, New York 11937, US
Get directions ⬈

Crescent Ct
Dallas, Texas 75201, US
Get directions ⬈

146 St NW, Edmonton, AB T5L 4S8, Canada
Edmonton , CA
Get directions ⬈

## Employees at Digital Infrastructure Group

 **James M. Sanford, CFA**
Managing Partner, Capital Markets
at Digital Infrastructure Group (DIG)

 **Rahul B.**
-

( See all employees )

**Linked**in **©** 2021

Accessibility

Privacy Policy

Copyright Policy

Guest Controls

Language ⌄

About

User Agreement

Cookie Policy

Brand Policy

Community Guidelines

# EXHIBIT "G"



### BEAUMONT

Search here...

Your Beaumont    Services    Residents    Business    I Want To...

Home / FAQs

How much is Digital Infrastructure Group investing in the Beaumont project?
The total amount depends on details still in negotiation, but the investment would be significant.

**High speed internet in Beaumont: General**

1  **What is an open-access network?**
Traditionally in Canada and the United States, internet infrastructure (cable, fibre-optic and other equipment) is built and operated by the same company that provides internet services to customers. With an open-access network, infrastructure and service delivery are separate. An independent party owns and operates the infrastructure, which internet service providers pay to use. This reduces barriers for providers to access new markets and encourages competition.

2  **What is 10 gigabit? What are the benefits?**
Ten gigabit, or 10-gig, refers to the amount of data that can be transferred per second – in this case, 10 gigabits per second capacity for uploading or downloading content through the internet. By comparison, the average download speed in Canada is less than 100 megabits per second (1,000 megabits equals 1 gigabit).

Residents can expect faster, more reliable internet service once the network is completed, though the actual speed you'll experience will depend on factors such as your computer or device, your modem or router, and your internet service provider.

3  **Beaumont already has one-gigabit per second internet in some places. What's the difference?**
Internet is vital to attract and retain growing businesses – the quality of it matters. 10-gig internet speed will eventually be the standard all over the world, just as we will see with 5G for cell coverage. In a resulting economy where location matters less than it did even a year ago, it will be the quality of services that attract high-impact companies and inform people's choices about where they're going to live

4  **How much is Digital Infrastructure Group investing in the Beaumont project?**
The total amount depends on details still in negotiation, but the investment would be significant

5  **Why is a company willing to make a major investment into improved access to high-speed internet for Beaumont? How will it recover its investment?**
Digital Infrastructure Group has committed $2 billion to support projects in Canada and is looking for willing partners. Beaumont's size, its location and the city's willingness to embrace innovative ideas make it an ideal location for one of the first projects in Canada

Like any business, Digital Infrastructure Group does expect to make a return on its investment. Once the network is built, it will receive revenue from fees charged to internet service providers.

6  **Who will own and operate the network?**
The network will be owned by Digital Infrastructure Group over the agreed upon concession period and then the infrastructure assets will be transferred to the City of Beaumont. If Beaumont chooses to extend the concession period (at any point) it will have the option to do so accordingly with the consortium.

7  **What other cities is the consortium working with?**
At this time, Aurora, Illinois has also announced that is it in negotiations with the consortium

---

Search

[All categories]

Categories

- An Categories
- 2017 Crisis
- Anual Course
- ABOUT DIA
- Assessment Notice
- Beaumont Composite Community
- Beaumont Brand
- Child Care
- Child Care Assessment projects
- Child Care Support Review
- CAO Communications
- Customer Service Program
- Downtown Urban Design Concept Plan
- Flora Park
- Flora Park Community Elimination
- Future Bylaws
- High speed internet

# EXHIBIT "H"

## ▼ High speed internet in Beaumont: General

Hide All Answers

1. **What is an open-access network?**
   Traditionally in Canada and the United States, internet infrastructure (cable, fibre-optic and other equipment) is built and operated by the same company that provides internet services to customers. With an open-access network, infrastructure and service delivery are separate. An independent party owns and operates the infrastructure, which internet service providers pay to use. This reduces barriers for providers to access new markets and encourages competition.

2. **What is 10 gigabit? What are the benefits?**
   Ten gigabits, or 10-gig, refers to the amount of data that can be transferred per second – in this case, 10 gigabits per second capacity for uploading or downloading content through the internet. By comparison, the average download speed in Canada is less than 100 megabits per second (1,000 megabits equals 1 gigabit).

   Residents can expect faster, more reliable internet service once the network is completed, though the actual speed you'll experience will depend on factors such as your computer or device, your modem or router, and your internet service provider.

3. **Beaumont already has one-gigabit per second internet in some places. What's the difference?**
   Internet is vital to attract and retain growing businesses – the quality of it matters. 10-gig internet speed will eventually be the standard all over the world, just as we will see with 5G for cell coverage. In a resetting economy where location matters less than it did even a year ago, it will be the quality of services that attract high-impact companies and inform people's choices about where they're going to live.

4. **How much is Smart City Capital investing in the Beaumont project?**
   The total amount depends on details still in negotiation, but the investment would be significant.

5. **Why is a company willing to make a major investment into improved access to high-speed internet for Beaumont? How will it recover its investment?**

### Categories

- All Categories
- 2017 Citizen Satisfaction Survey FAQs
- About Coyotes
- ABOUT ELA
- Assessment & Taxation
- Beaumont Sport and Recreation Centre Construction
- Beaumont Transit
- Cannabis
- Child Care Accreditation Program
- Child Care Services Review
- Child Care Services Waitlist Registration
- Curbside Collection Program
- Downtown Urban Design Concept Plan
- Drive-thru
- Face Covering Effectiveness
- Fitness Classes During BSRC Construction
- Herbicide and Pesticide Use
- High speed internet in Beaumont: General
- High speed internet in Beaumont: Internet Service
- High speed internet in Beaumont: Partnership Agreement
- Land Acquisition
- LED STREETLIGHT INFORMATION
- Municipal Census
- Open Space & Trails Master Plan
- PILOT PROJECT BACKGROUND
- Police False Alarms
- Project Refresh
- Property Tax Deferrals

Case 0:21-cv-60705-XXXX   Document 1-8   Entered on FLSD Docket 03/31/2021   Page 3 of 3

Smart City Capital has committed to support projects in Canada and is also looking for willing partners. Beaumont's size, its location and the city's willingness to embrace innovative ideas make it an ideal location for one of the first projects in Canada.

Like any business, Smart City Capital does expect to make a return on its investment. Once the network is built, it will receive revenue from fees charged to internet service providers.

6. <u>Who will own and operate the network?</u>
The network will be owned by Smart City Capital over the agreed upon concession period and then the infrastructure assets will be transferred to the City of Beaumont. If Beaumont chooses to extend the concession period (at any point) it will have the option to do so accordingly with the consortium.

7. <u>What other cities is the consortium working with?</u>
At this time, Aurora, Illinois has also announced that is it in negotiations with Smart City Capital and the consortium.

- Sidewalk, Trail and Road Maintenance
- Snow and Ice Control
- SOCIO-ECONOMIC BENEFITS
- Special Permissions and Special Events
- Temporary Face Covering Bylaw
- TRAFFIC IMPACTS
- Utility Accounts
- Utility Bill Deferrals
- Wastewater Collection
- Water Conservation
- Wearing a non-medical face covering

Portfolio   About        Helpful Links   ByLaws   Site Map
        Privacy Policy
Conditions Of Use

# EXHIBIT "I"

# Smart City Capital LLC., Project Non-Disclosure Agreement

This Mutual Non-Disclosure, Non-Circumvention Agreement (the "Agreement") is made and entered into between Smart City Capital, LLC and Smart City Capital Advisory, LLC collectively "SCC" (the "Company") limited liability companies  formed under the laws of the State of Delaware, having its head office at 2598 E Sunrise Blvd., Fort Lauderdale, Florida, Suite 210-A and "Recipient" identified below.

**Recipient:** Meridiam Infrastructure North America Corp, a corporation incorporated under the laws of the State of Delaware having an office at 605 Third Avenue, 36th floor, New York, NY 10158.

**The Effective Date of this Agreement is:** May 31, 2020

**1. Purpose.** The Company and Recipient (the "**Parties")** wish to enter into and/or continue discussions of mutual interest regarding Specific **Projects and Clients Associated with the Company and Recipient** (the "**Relationship**"); in connection with which, the Company and Recipient have disclosed and/or may further disclose certain information, including its Proprietary Information (as defined below). This Agreement is intended to allow the Parties to interact with respect to the Relationship while protecting the Company and Recipient from the subsequent unauthorized use or disclosure of certain information, including Proprietary Information (which includes Proprietary Information previously disclosed to Recipient or Company). Neither party represents or guarantees that a successful business transaction will result from the discussions and any agreement is subject to a written definitive agreement between the Parties.

**2. Definition of Proprietary Information.** " **Proprietary Information** " shall mean all business-confidential, proprietary and trade secret information and materials, whether in written, oral, electronic or another format, whether intentionally disclosed between parties or observed inadvertently either party, including, but not limited to, the following: (a) business, technical, financial or other operational information and materials; (b) information of a confidential, sensitive, non-public or personal nature, including information belonging to a third party or for which one party owes a duty of confidentiality; (c) trade secrets or proprietary business information, including but not limited to product information, laboratory notebooks, software, inventions, designs, engineering, strategic plans, marketing plans, research, formulae, processes, financial data, budgets, sales, costs and pricing, identities of suppliers or customer lists; (d) any other proprietary or Proprietary Information, including but not limited to any disclosures, materials or communications between the Parties marked "confidential," "proprietary" or similarly marked or, in the case of oral disclosures and communications, identified as such at the time of disclosure; or (e) any materials which a reasonable person would recognize from the surrounding facts and circumstances to be proprietary or confidential.

**3. Nondisclosure of Proprietary Information.** The Parties agree not to use any Proprietary Information disclosed in the Relationship for its own use or for any purpose other than to carry out discussions concerning, and the undertaking of, the Relationship. The Parties shall not disclose or permit disclosure of any Proprietary Information of the Company to third parties, other than (where applicable) directors, officers, employees, consultants and agents who are required to have the information in order to perform the Parties' authorized activities in connection with the Relationship. The Parties have had or will have all directors, officers, employees, consultants and agents who have access to Proprietary Information of the Company sign a nondisclosure agreement in content substantially similar to this Agreement. The Parties agree to take all reasonable and necessary measures to protect the secrecy of and avoid disclosure or unauthorized use of Proprietary Information of each party. Such measures shall include, but not be limited to, the highest degree of care that the Recipient utilizes to protect its own Proprietary Information of a similar nature, which shall be no less than reasonable care. Recipient agrees to notify the Company in writing of any actual or suspected misuse, misappropriation or unauthorized disclosure of Proprietary Information of the Company which may come to the Recipient's attention and to cooperate with the Company to stop and prevent such activities.

**Exceptions:** Notwithstanding the above, the Parties' confidentiality obligations hereunder shall not apply with regard to any Proprietary Information which the respective party can prove: (i) was in the public domain at the time it was disclosed or has entered the public domain through no fault of the respective party; (ii) was known to Either party, without restriction, at the time of disclosure, as demonstrated by files in existence at the time of disclosure, was developed independently without the use or reference to Proprietary Information;  (iii) is disclosed with the prior written approval of the Company; or (iv) is disclosed pursuant to applicable law or the order or requirement of a court, administrative agency, or other governmental body; provided, however, that the Respective party shall provide prompt notice of such court order or requirement to the Company to enable the Company to seek a protective order, at the Company's sole cost and expense, or otherwise prevent or restrict such disclosure and Respective party's right to disclose such Proprietary Information shall be strictly limited to the extent necessary to comply with such law, order or requirement

**4. No Duplication; Return of Materials.**

All documents and other tangible objects containing or representing the disclosing party's Proprietary Information and all copies thereof that are in the possession of the receiving party shall be promptly returned to the disclosing party upon the disclosing party's request. However, receiving party may retain Proprietary Information (a) to the extent necessary to comply with applicable law, regulation or bona fide document retention policies (including electronic copies of materials or summaries containing or reflecting Proprietary Information that automatically generated through data backup and/or archiving systems)., or (b) for the purpose of defending any claim related to this agreement or any transaction related hereto.

**5. Non-Circumvention.** The Parties agree (a) the identity of, and information relating to, any actual or potential customers, clients, or partners to whom one Party introduces the other shall be treated as Proprietary Information of the introducing Party with respect to the Relationship ; (b) Recipient agrees, for the entity, their officers, directors, agents, associates, and any related parties, that he/she will not, directly or indirectly, contact, deal with, or otherwise become involved with any entity or persons introduced, directly or indirectly, by or through Company, its officers, directors, agents, or associates, for the purpose of avoiding payment to Company of profits, fees, or otherwise, without the specific written approval of Company; c) Company agrees, for the entity, their officers, directors, agents, associates, and any related parties, that they will not, directly or indirectly, contact, deal with, or otherwise become involved with any entity or persons introduced, directly or indirectly, by or through Recipient, any officers, directors, agents, or associates, for the purpose of avoiding payment to recipient of profits, fees, or otherwise, without the specific written approval of Recipient; d) all of section 5 "Non-Circumvention" applies to business opportunities listed in Schedule A attached to this agreement, as well as future investment opportunities introduced to the Recipient by the Company. The Recipient covenants not to use the Proprietary Information to the detriment of the Company and to use it only in connection with written approval of the Company. To this end, no Proprietary information can be used in any way of case, without the written consent of the Proprietary Information / Intellectual Property owner.

**6. No Rights Granted.** Nothing in this Agreement shall be construed as granting any right, title or interest with respect to any patent, copyright or other intellectual property right of the Company or the Recipient, nor shall this Agreement grant the Parties any rights in or to the Company or the Recipient's Proprietary Information other than the limited right to review such Proprietary Information solely as expressly set forth in this Agreement.

**7. Term and Termination.** This Agreement shall commence on the Effective Date and terminate upon the earliest to occur of the following: (a) the permanent conclusion of discussions between the Parties without a written definitive agreement, (b) the execution of a written definitive agreement with confidentiality provisions that expressly supersede those set forth in this Agreement, or (c) the mutual written agreement of the Parties. The commitments of each party set forth herein shall survive any termination of this Agreement up to but not

beyond 2 years from the execution of this agreement.

**8. Assignment, Successors and Assigns.** Recipient may not assign this Agreement without the Company's prior written consent except in connection with a merger, acquisition, reorganization or sale of substantially all of its assets or equity; provided that following any such transaction, this Agreement shall continue to bind all persons and entities who had, have or will have access to the Company's Proprietary Information. Subject to the foregoing, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and permitted assigns of the Parties. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the Parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

**9. Severability.** If one or more provisions of this Agreement are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith. In the event that the parties cannot reach a mutually agreeable and enforceable replacement for such provision, then (a) such provision shall be excluded from this Agreement, (b) the balance of the Agreement shall be interpreted as if such provision were so excluded and (c) the balance of the Agreement shall be enforceable in accordance with its terms.

**10. Relationship Structure.** Nothing in this Agreement shall be construed to constitute an agency, partnership, joint venture, or other similar relationship between the Parties. The Parties may develop consulting, fee sharing, or other types of business arrangements as they move forward in discussions.

**11. Governing Law.** This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Delaware without giving effect to principles of conflicts of law.

**12. Remedies; Indemnification.** The Company and Recipient each agree that the obligations set forth in this Agreement are necessary and reasonable in order to protect the Parties and their business. The Company and Recipient each expressly agree that due to the unique nature of each party's Proprietary Information, monetary damages would be inadequate to compensate the Company for any breach by Recipient of its covenants and agreements set forth in this Agreement. Accordingly, the Company and Recipient each agree and acknowledge that any such violation or threatened violation shall cause irreparable injury to either party and that, in addition to any other remedies that may be available, in law, in equity or otherwise, each party shall be entitled (a) to obtain injunctive relief against the threatened breach of this Agreement or the continuation of any such breach by either party, without the necessity of proving actual damages, and (b) to be indemnified by the respective party from any loss or harm, including but not limited to attorney's fees, arising out of or in connection with any breach or enforcement of the respective party's obligations under this Agreement or the unauthorized use or disclosure of the either party's Proprietary Information.

**13. Amendment and Waiver.** Any term of this Agreement may be amended with the written consent of the Company and Recipient. Any amendment or waiver effected in accordance with this Section shall be binding upon the parties and their respective successors and assigns. Failure to enforce any provision of this Agreement by a party shall not constitute a waiver of any term hereof by such party.

**14. Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument. An executed counterpart may be transmitted via fax or scanned into PDF format and transmitted via email.

**15. Entire Agreement.** This Agreement is the product of both of the parties hereto, and constitutes the entire agreement between such parties pertaining to the subject matter hereof, and merges all prior negotiations and drafts of the parties with regard to the transactions contemplated herein. Any and all other written or oral agreements existing between the parties hereto regarding such transactions are expressly canceled.

**16. Export Control.** Any conditions on the use and disclosure of information as imposed by applicable export

control laws and regulations shall be in addition to those imposed herein. Nothing in this Agreement shall be deemed or interpreted to authorize any export for which such laws and regulations require a license or other approval, nor to derogate from the parties' respective obligations to comply with all such laws and regulations. Moreover, the Parties agree: (i) that any technical data or defense service received from either party under this Agreement will be handled in accordance with applicable export laws and regulations, including the International Traffic in Arms Regulations and the Arms Export Control Act; and (ii) that the Parties shall hold each other harmless from all claims, demands, damages, costs, fines, penalties, fees and all other expenses arising from the failure of the receiving party to comply with this section of the Agreement or the export laws or regulations implicated herewith.

**17. Marketing Restriction.** The Parties shall not disclose its relationship with Company clients, or mention the Parties' clients in any way, in their marketing materials, presentations, or press releases without prior mutual written consent.

**18. Headers.** The Headers used in this Agreement are for convenience only and have no legal or interpretive effect.

---

**The Parties have executed this Non-Circumvention, Non-Disclosure Agreement as of the date first above written.**

**RECIPIENT – Meridiam Infrastructure North America Corp.**

By: _____ Signature

Name:  **Jamie Rubin**                    Title: **CEO North America**

By: _____ Signature

Name:  **Olivier Garnier**                Title: **Global Risk Officer**

**Smart City Capital LLC.**

By: _____ Signature

Name:  Rahul Bhardwaj  Title:  Managing Director

**Schedule A**
**Business Documentation between Parties**
**List Date of presentation, project scope and client**

<u>**US Projects**</u>

1) **Aurora, Illinois: Smart Telecom Utility Project**
   a. **Sole Source Project - MOU EXECUTED; Exclusive Mandate**
   b. **Definitive Project Scopes of Work finalized with Committed execution partners**
      i. Committed Execution Partners
         1. OnLight Aurora LC3.
         2. Jacobs Engineering Group Inc.
         3. Nokia of America Corporation.
         4. FYBR Inc.

   c. **Project Execution Agreement & P3 Agreement with City being finalized (*Expected June 2020*)**
      i. City of Aurora – legal negotiation of contract terms supported by Ice Miller LLP. (retained by the City as Outside Council for project negotiation)

   d. **Aurora Project Vendor / Customer ecosystem**
      i. AT&T Inc.
      ii. Boingo Wireless Inc.
      iii. WOWI Networks
      iv. MetroNet Fiber Internet

2) **Oconee, Georgia: Smart Telecom Utility Project**
   a. **RFP Process – PROJECT AWARDED**
   b. **Definitive Project Scopes of Work being finalized with Committed Execution Partners**
      i. Committed Execution Partners
         1. Nokia of America Corporation.
         2. Progressive Communications Inc.
         3. Point Broadband Inc.

3) **Miami Gardens, Florida: Smart Telecom Utility Project**
   a. **Sole Source Project - MOU EXECUTED; Exclusive Mandate**
   b. **Definitive Project Scopes of Work finalized with Committed execution partners.**
      i. Committed Execution Partners
         1. SAC Wireless LLC.
         2. Nokia of America Corporation.
         3. Wellness Tech. | ENZEN Global Solutions Pvt Ltd
   c. **Project Execution Agreement & P3 Agreement with City under review**
      i. SCC In - House Council and City Attorney reviewing*

4) **Miami – Dade, Florida: Smart Lighting Transformation**
   a. **Submitted RFP Process – PROJECT FINALIST ***
      i. **Committed Consortium Execution Partners Part of Bidding Team**
         1. Smart City Capital Partner 1: AT&T Inc.
         2. Smart City Capital Partner 2: Jacobs Engineering Group
         3. Smart City Capital Partner 3: Nokia of America Corporation.
         4. Smart City Capital Partner 4: Mastec Inc.
         5. Smart City Capital Partner 5:  360 Networking Solutions LLC.

## CANADA Projects

1) **Kingston, Ontario: Smart Telecom Utility Project**
   a. **Sole Source Project - MOU EXECUTED; Exclusive Mandate**
   b. **Definitive Project Scopes of Work being negotiated with Committed execution partners.**
      i. Committed Execution Partners
         1. Utilities Kingston Municipal Corporation
         2. Jacobs Engineering Group Inc.
         3. Nokia of America Corporation.

2) **Niagara Regional Broadband Network, Niagara Region Project within Ontario:  MOU EXECUTED with The City of Niagara Falls and The Town of Niagara on the Lake.**
   a. **Sole Source Project - MOU EXECUTED**
      i. Committed Execution Partners
         1. Niagara Regional Boradband Network (NRBN) – Muncipal Owned Regional ISP
         2. Jacobs Engineering Group Inc.
         3. Nokia of America Corporation.

# EXHIBIT "J"



## MUTUAL NON-DISCLOSURE AGREEMENT

THIS MUTUAL NON-DISCLOSURE AGREEMENT (this "Agreement") is made as of *August 20, 2020* (the "Effective Date") by and between *Smart City Capital LLC.* and OnLight L3C, an Illinois low-profit limited liability company , with its primary place of business at 43 W. Galena Blvd, Aurora, Illinois 60506. Each party disclosing Confidential Information under this Agreement is referred to as a "Disclosing Party." Each party receiving Confidential Information under this Agreement is a "Receiving Party."

WHEREAS, the parties desire to set out their understanding with respect to the treatment of certain communications between them (as defined below, the "Confidential Information"), AND

WHEREAS, the Disclosing Party in each instance desires to maintain the confidentiality and proprietary nature of the Confidential Information.

NOW, THEREFORE, in consideration of the disclosure of the Confidential Information and other confidential documents by the parties under this Agreement, continued negotiations for additional business opportunities, and other valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties agree as follows:

1.  STATEMENT OF PURPOSE. This Agreement is being executed in connection with discussions and other exchanges of information and documents that representatives of the parties have had or will have for the purpose of evaluating the possibility of entering into certain business transactions and for such other purposes as the parties may agree in writing.

2.  CONFIDENTIAL INFORMATION. Each party understands and agrees that during the term of this Agreement it may be furnished with or otherwise have access to information that the other party considers to be confidential, including but not limited to trade secrets, copyrights, and information which may be subject to trade secret, copyright, or business and technical information, financial statements, marketing plans, research, designs, customer information (including customer identities, pricing, annual business volumes, and customer contact identities), the identities of Disclosing Party's employees and independent contractors, plans, methods, techniques, processes and know-how, whether tangible or intangible and whether or not stored, compiled or memorialized physically, orally, mentally, electronically, graphically or in writing (the "Confidential Information"). When Confidential Information is in intangible form or disclosed orally, information will be confidential if identified as such at the time of disclosure as confidential and proprietary or if subsequently summarized as stated in the following sentence. Confidential Information in intangible form or orally disclosed may be summarized in writing and the summary delivered to the receiving party within thirty (30) days after disclosure. Each party agrees to secure and protect the Confidential Information of the other in a manner consistent with the maintenance of the other's rights therein, using at least as great a degree of care as it uses to maintain the confidentiality of its own confidential information of a similar nature or importance but in no event using less than reasonable efforts.

Neither party will use any Confidential Information supplied by the other party or the other party's accountants, attorneys, employees, or agents, except for the purpose of considering whether to enter into a business transaction with the Disclosing Party. Neither party will sell, transfer, publish, disclose, or otherwise use or make available any portion of the Confidential Information provided by the other party (or its accountants, attorneys, employees, or agents) to third parties, except to those of the Receiving Party's directors, officers, employees, or attorneys who have a need-to-know the same in furtherance of the purposes of this Agreement and as expressly authorized in this Agreement, and who have agreed individually not to use the Confidential Information for any purpose other than considering whether to enter into any business transactions between the parties, or (ii) disclose the Confidential

1

Information except as permitted by this Agreement. No license under any patent, trade secret, trademark, copyright or any other intellectual property or proprietary rights laws is either granted or implied by the disclosure of any Confidential Information. Nothing in this Agreement shall be deemed to obligate either party to disclose any Confidential Information to the other, or to accept any Confidential Information from the other.

3. NON-CONFIDENTIAL INFORMATION. Notwithstanding Section 2, above, Confidential Information of a party shall not include information which: (a) is as of the time of its disclosure, or thereafter becomes, part of the public domain through a source other than the receiving party; (b) was rightfully known to the receiving party as of the time of its disclosure, other than by a disclosure governed by this Agreement or under circumstances otherwise imposing restrictions on use or disclosure which reasonably should have become known to receiving party; (c) is independently developed by the receiving party without use of or reference to the Confidential Information supplied by the other party; (d) is subsequently learned from a third party not under a confidentiality obligation to the disclosing party, directly or indirectly; or (e) is required to be disclosed pursuant to a duly authorized subpoena, court order, or government authority, whereupon the party subject to same shall, if permitted by applicable law, provide prompt written notice to the other party prior to such disclosure, so that such party may seek a protective order or other appropriate remedy. Provided, however, any information provided by one party to the other which is protected by copyrights, patents, trade secrets, or trademarks shall enjoy all protections it is otherwise entitled to, notwithstanding preceding sentence.

4. OWNERSHIP. The receiving party agrees that all Confidential Information of the disclosing party, which comes into the receiving party's custody or possession, is and at all times shall be exclusively the property of the disclosing party, to be used by the receiving party only for the purposes expressly contemplated by this Agreement. At the request of the disclosing party, the receiving party shall promptly return or destroy all of its copies of such Confidential Information or return the same to disclosing party and shall, within thirty (30) days of receiving such a request, certify in writing its compliance with the terms of this provision. After such destruction or delivery, the receiving party shall not retain any copies thereof, except an archival copy may be retained in a secure place by receiving party's attorney for purpose of resolving any future disputes between the parties in connection therewith.

5. NO REPRESENTATIONS OR WARRANTIES. Neither party makes any representation or warranty as to the accuracy or completeness of the Confidential Information or other information provided to the other party. Without limiting the generality of the foregoing, the Confidential Information may include certain statements, estimates and projections provided by the disclosing party with respect to the anticipated future performance of the party. Such statements, estimates and projections reflect various assumptions made by the disclosing party concerning anticipated results, which assumptions may or may not prove to be correct. No representation or warranty is made as to the accuracy of such assumptions, statements, estimates or projections, including any budget. Neither party nor any of its representatives shall have any liability resulting from the use of the Confidential Information by the other party or any of its representatives. Only those representations or warranties which are made in a final definitive agreement regarding any ultimate transaction, when, as and if executed, and subject to such limitations and restrictions as may be specified therein, will have any legal effect.

6. MISCELLANEOUS. This Agreement constitutes the entire agreement between the parties hereto concerning the subject matter hereof and supersedes any prior or contemporaneous agreements concerning the subject matter hereof. The term of this Agreement shall be for a period of one (1) year unless sooner terminated upon written notice by one party to the other or extended by further written agreement signed by both parties. The obligations of confidentiality hereunder with respect to all Confidential Information shall survive the termination or expiration of this Agreement. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, and the offending provision shall be deemed automatically modified or reformed by the minimum necessary to render it valid and enforceable under applicable law, with the nature and extent of the modifications to be determined by a court of competent jurisdiction. No delay or omission by a party in exercising any right under this Agreement will operate as a waiver of that or any other right. This Agreement is governed by and will be construed in accordance with the laws of the State of Illinois without regard to conflicts of law principles. Neither party shall be deemed to be an agent, partner, joint venture, or franchisor- franchisee with the other for any purpose. Each party acknowledges that its breach of this Agreement will cause irreparable injury to the other party and that the other party may seek and obtain injunctive and other equitable relief against such breach or threatened breach, without posting bond or waiving any other remedies at law or in equity. No amendment or modification of this Agreement shall be valid or binding on the parties unless made in a mutually executed writing.

Neither party shall disclose, publicize or advertise in any manner the discussions or negotiations contemplated by this Agreement without the prior written consent of the other party except as may be required by law whereupon the party subject to same shall provide prompt written notice to the other party prior to such disclosure, so that such other party may seek a protective order or other appropriate remedy. All notices, requests, and consents under this Agreement shall be in writing and shall be deemed to have been delivered (a) on the date personally delivered or (b) when sent via facsimile or e-mail and confirmed to the parties' addresses set forth herein or in a subsequent written notice. This Agreement may be executed in multiple counterparts, all of which taken together shall constitute a single instrument. This Agreement may be delivered by facsimile.

This Agreement shall be binding upon, inure to the benefit of, and be enforceable by the parties' respective successors and assigns.

Nothing in this Agreement shall prohibit either party from competing with the other or require either party to enter into any transaction with the other party. Unless and until a final definitive agreement regarding such a transaction between the parties has been executed and delivered, neither party will be under any legal obligation of any kind whatsoever except for the matters specifically agreed to herein.

      IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date and agree to be legally bound by all terms and conditions contained herein.

OnLight L3C

Michael R. Pegues
Manager

Smart City Capital LLC.

Name: Rahul S. Bhardwaj
Title: Managing Director

3



# Electronically Certified Court Record

### (cover page)

This cover page is for informational purposes only and is not a requirement when presenting the **Electronic Certified Document**. Directly below the cover page, at the bottom of page 1, you will find the digital signature bearing the identity and authority of the Clerk. On the left side of each page is a unique code identifying the electronic certification for this document.

---

### DOCUMENT INFORMATION

| | |
|---|---|
| **Agency Name:** | Broward County Clerk of Courts |
| **Clerk of the Circuit Court:** | Honorable Brenda D. Forman |
| **Date Issued:** | 8/8/2023 12:35:42 PM |
| **Unique Reference Number:** | CAA-FAA-BCABB-HCBCFEHC-GJBGDF-B |
| **Case Docket:** | 7/21/2023 - eSummons Issuance - 2 Pages |
| **Requesting Party Code:** | 500 |
| **Requesting Party Reference:** | A202308081230311148 |

---

### HOW TO VERIFY THIS DOCUMENT

This electronically certified Court Record contains a unique electronic reference number for identification printed on each page. This document is delivered in PDF format and contains a digital signature identifying the certifier and a tamper proof seal indicating whether this document has been tampered with. The second page of this document contains a digital signature indicating the certifier as the Broward County Clerk of Courts. Open this document using Adobe Reader software to verify the digital signature of the author. Visit https://www.browardclerk.org/ecertify to learn more about validating this certified copy.



Filing # 177991590 E-Filed 07/21/2023 04:09:16 PM

CACE-23-015818

Unique Code : CAA-FAA-BCABB-HCBCFEHC-GJBGDF-B Page 1 of 2

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY,
FLORIDA

CASE NO. CACE-23-015818

SMART CITY CAPITAL, LLC,

      Plaintiff,

v.

RAHUL BHARDWAJ, JAMES M. SANFORD,
MICHAEL BIDWELL, DIGITAL INFRASTRUCTURE
GROUP, INC., DIGITAL INFRASTRUCTURE
CAPITAL GROUP, LLC, SAG HARBOR ADVISORS,
INC., MERIDIAM INFRASTRUCTURE NORTH
AMERICA CORPORATION, ONLIGHTL3C, LLC,
and MICHAEL PEGUES,

      Defendants.

_____/

## <u>SUMMONS</u>

**THE STATE OF FLORIDA:**
**To Each Sheriff of Said State(s):**

**YOU ARE HEREBY COMMANDED** to serve this Summons and Complaint for Damages and
Permanent Injunctive Relief (the "Complaint") on Defendant:

**MICHAEL PEGUES**
43-W Galena Blvd.
Aurora, IL 60506

The Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, to
wit: **Scott L. Cagan, Esquire, GrayRobinson, P.A., 401 East Las Olas Boulevard, Suite
1000, Fort Lauderdale, FL 33301 - (954) 761-8111** within 20 days **"Except when suit is
brought pursuant to §768.28, Florida Statutes, if the State of Florida, one of its agencies, or
one of its officials or employees sued in his or her official capacity is a defendant, the time
to respond shall be 40 days. When suit is brought pursuant to §768.28, Florida Statutes,
the time to respond shall be 30 days."** after service of the Summons on the Defendant
exclusive of the day of service, and to file the original of the defenses with the Clerk of this
Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 07/21/2023 04:09:15 PM.****

I HEREBY ATTEST THAT THIS CERTIFIED DOCUMENT IS
A TRUE AND CORRECT COPY AS SAME APPEARS ON RECORD
WITH BROWARD COUNTY CLERK OF COURTS.

VERIFY AT: HTTPS://WWW.BROWARDCLERK.ORG/ECERTIFY



Digitally signed by The Honorable Brenda D. Forman
Date: 2023.08.08 12:35:43 -04:00
Reason: Electronic Certified Copy
Location: 201 S.E. 6th Street, Fort Lauderdale, FL
33301

to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED this 2      JUL 24 2023

CLERK OF THE CIRCUIT COURT

By:_____

Deputy Clerk

BRENDA D. FORMAN

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demanadante).

## IMPORTANT

Des poursuites judiciaires ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en memo temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

/17014/2/#50981430 v1

2



# Electronically Certified Court Record

## (cover page)

This cover page is for informational purposes only and is not a requirement when presenting the **Electronic Certified Document**. Directly below the cover page, at the bottom of page 1, you will find the digital signature bearing the identity and authority of the Clerk. On the left side of each page is a unique code identifying the electronic certification for this document.

### DOCUMENT INFORMATION

| | |
|---|---|
| **Agency Name:** | Broward County Clerk of Courts |
| **Clerk of the Circuit Court:** | Honorable Brenda D. Forman |
| **Date Issued:** | 8/8/2023 12:35:38 PM |
| **Unique Reference Number:** | CAA-FAA-BCABB-HCBCFEGG-GJBGDE-G |
| **Case Docket:** | 7/21/2023 - eSummons Issuance - 2 Pages |
| **Requesting Party Code:** | 500 |
| **Requesting Party Reference:** | A202308081230311148 |

### HOW TO VERIFY THIS DOCUMENT

This electronically certified Court Record contains a unique electronic reference number for identification printed on each page. This document is delivered in PDF format and contains a digital signature identifying the certifier and a tamper proof seal indicating whether this document has been tampered with. The second page of this document contains a digital signature indicating the certifier as the Broward County Clerk of Courts. Open this document using Adobe Reader software to verify the digital signature of the author. Visit https://www.browardclerk.org/ecertify to learn more about validating this certified copy.



Unique Code : CAA-FAA-BCABB-HCBCFEGG-GJBGDE-G Page 1 of 2

Filing # 177991590 E-Filed 07/21/2023 04:09:16 PM

CACE-23-015818

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY,
FLORIDA

CASE NO. CACE-23-015818

SMART CITY CAPITAL, LLC,

      Plaintiff,

v.

RAHUL BHARDWAJ, JAMES M. SANFORD,
MICHAEL BIDWELL, DIGITAL INFRASTRUCTURE
GROUP, INC., DIGITAL INFRASTRUCTURE
CAPITAL GROUP, LLC, SAG HARBOR ADVISORS,
INC., MERIDIAM INFRASTRUCTURE NORTH
AMERICA CORPORATION, ONLIGHTL3C, LLC,
and MICHAEL PEGUES,

      Defendants.

_____/

## SUMMONS

**THE STATE OF FLORIDA:**
**To Each Sheriff of Said State(s):**

**YOU ARE HEREBY COMMANDED** to serve this Summons and Complaint for Damages and
Permanent Injunctive Relief (the "Complaint") on Defendant:

**ONLIGHTL3C, LLC**
43-W Galena Blvd.
Aurora, IL 60506

The Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, to
wit: **Scott L. Cagan, Esquire, GrayRobinson, P.A., 401 East Las Olas Boulevard, Suite
1000, Fort Lauderdale, FL 33301 - (954) 761-8111** within 20 days **"Except when suit is
brought pursuant to §768.28, Florida Statutes, if the State of Florida, one of its agencies, or
one of its officials or employees sued in his or her official capacity is a defendant, the time
to respond shall be 40 days. When suit is brought pursuant to §768.28, Florida Statutes,
the time to respond shall be 30 days."** after service of the Summons on the Defendant
exclusive of the day of service, and to file the original of the defenses with the Clerk of this
Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 07/21/2023 04:09:15 PM.****

I HEREBY ATTEST THAT THIS CERTIFIED DOCUMENT IS
A TRUE AND CORRECT COPY AS SAME APPEARS ON RECORD
WITH BROWARD COUNTY CLERK OF COURTS.

VERIFY AT: HTTPS://WWW.BROWARDCLERK.ORG/ECERTIFY



Digitally signed by The Honorable Brenda D. Forman
Date: 2023.08.08 12:35:39 -04:00
Reason: Electronic Certified Copy
Location: 201 S.E. 6th Street, Fort Lauderdale, FL
33301

to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED this 2        JUL 24 2023

CLERK OF THE CIRCUIT COURT

By:_____
Deputy Clerk

BRENDA D. FORMAN

### IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demanadante).

### IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en memo temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

/17014/2#50981401 v1



# Electronically Certified Court Record

### (cover page)

This cover page is for informational purposes only and is not a requirement when presenting the **Electronic Certified Document**. Directly below the cover page, at the bottom of page 1, you will find the digital signature bearing the identity and authority of the Clerk. On the left side of each page is a unique code identifying the electronic certification for this document.

### DOCUMENT INFORMATION

| | |
|---|---|
| **Agency Name:** | Broward County Clerk of Courts |
| **Clerk of the Circuit Court:** | Honorable Brenda D. Forman |
| **Date Issued:** | 8/8/2023 12:35:34 PM |
| **Unique Reference Number:** | CAA-FAA-BCABB-HCBCFEGB-GJBGDD-J |
| **Case Docket:** | 7/21/2023 - eSummons Issuance - 2 Pages |
| **Requesting Party Code:** | 500 |
| **Requesting Party Reference:** | A202308081230311148 |

### HOW TO VERIFY THIS DOCUMENT

This electronically certified Court Record contains a unique electronic reference number for identification printed on each page. This document is delivered in PDF format and contains a digital signature identifying the certifier and a tamper proof seal indicating whether this document has been tampered with. The second page of this document contains a digital signature indicating the certifier as the Broward County Clerk of Courts. Open this document using Adobe Reader software to verify the digital signature of the author. Visit https://www.browardclerk.org/ecertify to learn more about validating this certified copy.



Filing # 177991590 E-Filed 07/21/2023 04:09:16 PM

CACE-23-015818

Unique Code : CAA-FAA-BCABB-HCBCFEGB-GJBGDD-J Page 1 of 2

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY,
FLORIDA

CASE NO. CACE-23-015818

SMART CITY CAPITAL, LLC,

      Plaintiff,

v.

RAHUL BHARDWAJ, JAMES M. SANFORD,
MICHAEL BIDWELL, DIGITAL INFRASTRUCTURE
GROUP, INC., DIGITAL INFRASTRUCTURE
CAPITAL GROUP, LLC, SAG HARBOR ADVISORS,
INC., MERIDIAM INFRASTRUCTURE NORTH
AMERICA CORPORATION, ONLIGHTL3C, LLC,
and MICHAEL PEGUES,

      Defendants.

_____/

## SUMMONS

**THE STATE OF FLORIDA:**
**To Each Sheriff of Said State(s):**

**YOU ARE HEREBY COMMANDED** to serve this Summons and Complaint for Damages and
Permanent Injunctive Relief (the "Complaint") on Defendant:

**MERIDIAM INFRASTRUCTURE NORTH AMERICAN CORPORATION**

605 Third Ave., 36th Floor
New York, NY 10158

The Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, to
wit: **Scott L. Cagan, Esquire, GrayRobinson, P.A., 401 East Las Olas Boulevard, Suite
1000, Fort Lauderdale, FL 33301 - (954) 761-8111** within 20 days **"Except when suit is
brought pursuant to §768.28, Florida Statutes, if the State of Florida, one of its agencies, or
one of its officials or employees sued in his or her official capacity is a defendant, the time
to respond shall be 40 days.  When suit is brought pursuant to §768.28, Florida Statutes,
the time to respond shall be 30 days."** after service of the Summons on the Defendant
exclusive of the day of service, and to file the original of the defenses with the Clerk of this
Court either before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails

I HEREBY ATTEST THAT THIS CERTIFIED DOCUMENT IS
A TRUE AND CORRECT COPY AS SAME APPEARS ON RECORD
WITH BROWARD COUNTY CLERK OF COURTS.

VERIFY AT: HTTPS://WWW.BROWARDCLERK.ORG/ECERTIFY



Digitally signed by The Honorable Brenda D. Forman
Date: 2023.08.08 12:35:34 -04:00
Reason: Electronic Certified Copy
Location: 201 S.E. 6th Street, Fort Lauderdale, FL
33301

to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED t      JUL 24 2023      3

CLERK OF THE CIRCUIT COURT

By:_____
     Deputy Clerk

BRENDA D. FORMAN

### IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demanadante).

### IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en memo temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

/17014/2#50981509 v1



# Electronically Certified Court Record

### (cover page)

This cover page is for informational purposes only and is not a requirement when presenting the **Electronic Certified Document**. Directly below the cover page, at the bottom of page 1, you will find the digital signature bearing the identity and authority of the Clerk. On the left side of each page is a unique code identifying the electronic certification for this document.

---

### DOCUMENT INFORMATION

| | |
|---|---|
| **Agency Name:** | Broward County Clerk of Courts |
| **Clerk of the Circuit Court:** | Honorable Brenda D. Forman |
| **Date Issued:** | 8/8/2023 12:35:29 PM |
| **Unique Reference Number:** | CAA-FAA-BCABB-HCBCFEFG-GJBGDC-B |
| **Case Docket:** | 7/21/2023 - eSummons Issuance - 2 Pages |
| **Requesting Party Code:** | 500 |
| **Requesting Party Reference:** | A202308081230311148 |

---

### HOW TO VERIFY THIS DOCUMENT

This electronically certified Court Record contains a unique electronic reference number for identification printed on each page. This document is delivered in PDF format and contains a digital signature identifying the certifier and a tamper proof seal indicating whether this document has been tampered with. The second page of this document contains a digital signature indicating the certifier as the Broward County Clerk of Courts. Open this document using Adobe Reader software to verify the digital signature of the author. Visit https://www.browardclerk.org/ecertify to learn more about validating this certified copy.



Filing # 177991590 E-Filed 07/21/2023 04:09:16 PM                    CACE-23-015818

Unique Code : CAA-FAA-BCABB-HCBCFEFG-GJBGDC-B Page 1 of 2

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY,
FLORIDA

CASE NO. CACE-23-015818

SMART CITY CAPITAL, LLC,

       Plaintiff,

v.

RAHUL BHARDWAJ, JAMES M. SANFORD,
MICHAEL BIDWELL, DIGITAL INFRASTRUCTURE
GROUP, INC., DIGITAL INFRASTRUCTURE
CAPITAL GROUP, LLC, SAG HARBOR ADVISORS,
INC., MERIDIAM INFRASTRUCTURE NORTH
AMERICA CORPORATION, ONLIGHTL3C, LLC,
and MICHAEL PEGUES,

       Defendants.

_____/

## <u>SUMMONS</u>

**THE STATE OF FLORIDA:**
**To Each Sheriff of Said State(s):**

**YOU ARE HEREBY COMMANDED** to serve this Summons and Complaint for Damages and
Permanent Injunctive Relief (the "Complaint") on Defendant:

**SAG HARBOR ADVISORS, INC.**
107 Stony Hill Road
Sag Harbor, NY 11963

The Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, to
wit: **Scott L. Cagan, Esquire, GrayRobinson, P.A., 401 East Las Olas Boulevard, Suite
1000, Fort Lauderdale, FL 33301 - (954) 761-8111** within 20 days **"<u>Except when suit is
brought pursuant to §768.28, Florida Statutes, if the State of Florida, one of its agencies, or
one of its officials or employees sued in his or her official capacity is a defendant, the time
to respond shall be 40 days.  When suit is brought pursuant to §768.28, Florida Statutes,
the time to respond shall be 30 days.</u>"** after service of the Summons on the Defendant
exclusive of the day of service, and to file the original of the defenses with the Clerk of this
Court either before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 07/21/2023 04:09:15 PM.****

I HEREBY ATTEST THAT THIS CERTIFIED DOCUMENT IS
A TRUE AND CORRECT COPY AS SAME APPEARS ON RECORD
WITH BROWARD COUNTY CLERK OF COURTS.

VERIFY AT: HTTPS://WWW.BROWARDCLERK.ORG/ECERTIFY



Digitally signed by The Honorable Brenda D. Forman
Date: 2023.08.08 12:35:30 -04:00
Reason: Electronic Certified Copy
Location: 201 S.E. 6th Street, Fort Lauderdale, FL
33301

to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED this 2        JUL 24 2023

CLERK OF THE CIRCUIT COURT

By:_____
Deputy Clerk

BRENDA D. FORMAN

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandante o Abogado del Demanadante).

## IMPORTANT

Des poursuites judiciaires ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en memo temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

/17014/2/#50981358 v1

2



# Electronically Certified Court Record

### (cover page)

This cover page is for informational purposes only and is not a requirement when presenting the **Electronic Certified Document**. Directly below the cover page, at the bottom of page 1, you will find the digital signature bearing the identity and authority of the Clerk. On the left side of each page is a unique code identifying the electronic certification for this document.

---

### DOCUMENT INFORMATION

| | |
|---|---|
| **Agency Name:** | Broward County Clerk of Courts |
| **Clerk of the Circuit Court:** | Honorable Brenda D. Forman |
| **Date Issued:** | 8/8/2023 12:35:20 PM |
| **Unique Reference Number:** | CAA-FAA-BCABB-HCBCFEED-GJBGDA-D |
| **Case Docket:** | 7/21/2023 - eSummons Issuance - 2 Pages |
| **Requesting Party Code:** | 500 |
| **Requesting Party Reference:** | A202308081230311148 |

---

### HOW TO VERIFY THIS DOCUMENT

This electronically certified Court Record contains a unique electronic reference number for identification printed on each page. This document is delivered in PDF format and contains a digital signature identifying the certifier and a tamper proof seal indicating whether this document has been tampered with. The second page of this document contains a digital signature indicating the certifier as the Broward County Clerk of Courts. Open this document using Adobe Reader software to verify the digital signature of the author. Visit https://www.browardclerk.org/ecertify to learn more about validating this certified copy.



Filing # 177991590 E-Filed 07/21/2023 04:09:16 PM          CACE-23-015818

Unique Code : CAA-FAA-BCABB-HCBCFEED-GJBGDA-D Page 1 of 2

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY,
FLORIDA

CASE NO. CACE-23-015818

SMART CITY CAPITAL, LLC,

     Plaintiff,

v.

RAHUL BHARDWAJ, JAMES M. SANFORD,
MICHAEL BIDWELL, DIGITAL INFRASTRUCTURE
GROUP, INC., DIGITAL INFRASTRUCTURE
CAPITAL GROUP, LLC, SAG HARBOR ADVISORS,
INC., MERIDIAM INFRASTRUCTURE NORTH
AMERICA CORPORATION, ONLIGHTL3C, LLC,
and MICHAEL PEGUES,

     Defendants.
_____/

## SUMMONS

**THE STATE OF FLORIDA:**
**To Each Sheriff of Said State(s):**

**YOU ARE HEREBY COMMANDED** to serve this Summons and Complaint for Damages and
Permanent Injunctive Relief (the "Complaint") on Defendant:

**DIGITAL INFRASTRUCTURE GROUP, INC.**
60 Columbia Way, Suite 200
Markham, ON L3R 0C9

The Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, to
wit: **Scott L. Cagan, Esquire, GrayRobinson, P.A., 401 East Las Olas Boulevard, Suite
1000, Fort Lauderdale, FL 33301 - (954) 761-8111** within 20 days **"Except when suit is
brought pursuant to §768.28, Florida Statutes, if the State of Florida, one of its agencies, or
one of its officials or employees sued in his or her official capacity is a defendant, the time
to respond shall be 40 days. When suit is brought pursuant to §768.28, Florida Statutes,
the time to respond shall be 30 days."** after service of the Summons on the Defendant
exclusive of the day of service, and to file the original of the defenses with the Clerk of this
Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 07/21/2023 04:09:15 PM.****

I HEREBY ATTEST THAT THIS CERTIFIED DOCUMENT IS
A TRUE AND CORRECT COPY AS SAME APPEARS ON RECORD
WITH BROWARD COUNTY CLERK OF COURTS.

VERIFY AT: HTTPS://WWW.BROWARDCLERK.ORG/ECERTIFY



Digitally signed by The Honorable Brenda D. Forman
Date: 2023.08.08 12:35:21 -04:00
Reason: Electronic Certified Copy
Location: 201 S.E. 6th Street, Fort Lauderdale, FL
33301

to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED         JUL 24 2023        '3

CLERK OF THE CIRCUIT COURT

By:_____

Deputy Clerk

BRENDA D. FORMAN

### IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandante o Abogado del Demanadante).

### IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en memo temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

/17014/2#50981248 v1

2



# Electronically Certified Court Record

### (cover page)

This cover page is for informational purposes only and is not a requirement when presenting the **Electronic Certified Document**. Directly below the cover page, at the bottom of page 1, you will find the digital signature bearing the identity and authority of the Clerk. On the left side of each page is a unique code identifying the electronic certification for this document.

### DOCUMENT INFORMATION

| | |
|---|---|
| **Agency Name:** | Broward County Clerk of Courts |
| **Clerk of the Circuit Court:** | Honorable Brenda D. Forman |
| **Date Issued:** | 8/8/2023 12:35:16 PM |
| **Unique Reference Number:** | CAA-FAA-BCABB-HCBCFEEA-GJBGCJ-B |
| **Case Docket:** | 7/21/2023 - eSummons Issuance - 2 Pages |
| **Requesting Party Code:** | 500 |
| **Requesting Party Reference:** | A202308081230311148 |

### HOW TO VERIFY THIS DOCUMENT

This electronically certified Court Record contains a unique electronic reference number for identification printed on each page. This document is delivered in PDF format and contains a digital signature identifying the certifier and a tamper proof seal indicating whether this document has been tampered with. The second page of this document contains a digital signature indicating the certifier as the Broward County Clerk of Courts. Open this document using Adobe Reader software to verify the digital signature of the author. Visit https://www.browardclerk.org/ecertify to learn more about validating this certified copy.



Filing # 177991590 E-Filed 07/21/2023 04:09:16 PM                    CACE-23-015818

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY,
FLORIDA

CASE NO. CACE-23-015818

SMART CITY CAPITAL, LLC,

      Plaintiff,

v.

RAHUL BHARDWAJ, JAMES M. SANFORD,
MICHAEL BIDWELL, DIGITAL INFRASTRUCTURE
GROUP, INC., DIGITAL INFRASTRUCTURE
CAPITAL GROUP, LLC, SAG HARBOR ADVISORS,
INC., MERIDIAM INFRASTRUCTURE NORTH
AMERICA CORPORATION, ONLIGHTL3C, LLC,
and MICHAEL PEGUES,

      Defendants.
_____/

## SUMMONS

**THE STATE OF FLORIDA:**
**To Each Sheriff of Said State(s):**

**YOU ARE HEREBY COMMANDED** to serve this Summons and Complaint for Damages and
Permanent Injunctive Relief (the "Complaint") on Defendant:

**MICHAEL BIDWELL**
2100-222 3 Ave SW
Calgary Alberta CA T2P 0B4

The Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, to
wit: **Scott L. Cagan, Esquire, GrayRobinson, P.A., 401 East Las Olas Boulevard, Suite
1000, Fort Lauderdale, FL 33301 - (954) 761-8111** within 20 days **"Except when suit is
brought pursuant to §768.28, Florida Statutes, if the State of Florida, one of its agencies, or
one of its officials or employees sued in his or her official capacity is a defendant, the time
to respond shall be 40 days.  When suit is brought pursuant to §768.28, Florida Statutes,
the time to respond shall be 30 days."** after service of the Summons on the Defendant
exclusive of the day of service, and to file the original of the defenses with the Clerk of this
Court either before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 07/21/2023 04:09:15 PM.****

I HEREBY ATTEST THAT THIS CERTIFIED DOCUMENT IS
A TRUE AND CORRECT COPY AS SAME APPEARS ON RECORD
WITH BROWARD COUNTY CLERK OF COURTS.

VERIFY AT: HTTPS://WWW.BROWARDCLERK.ORG/ECERTIFY



Digitally signed by The Honorable Brenda D. Forman
Date: 2023.08.08 12:35:17 -04:00
Reason: Electronic Certified Copy
Location: 201 S.E. 6th Street, Fort Lauderdale, FL
33301

Unique Code : CAA-FAA-BCABB-HCBCFEEA-GJBGCJ-B Page 1 of 2

to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED this ~~21st day of July, 2023~~   JUL 24 2023

CLERK OF THE CIRCUIT COURT

By:_____
      Deputy Clerk

BRENDA D. FORMAN

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demanadante).

## IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en memo temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

/17014/2#50981192 v1

2



# Electronically Certified Court Record

**(cover page)**

This cover page is for informational purposes only and is not a requirement when presenting the **Electronic Certified Document**. Directly below the cover page, at the bottom of page 1, you will find the digital signature bearing the identity and authority of the Clerk. On the left side of each page is a unique code identifying the electronic certification for this document.

## DOCUMENT INFORMATION

| | |
|---|---|
| **Agency Name:** | Broward County Clerk of Courts |
| **Clerk of the Circuit Court:** | Honorable Brenda D. Forman |
| **Date Issued:** | 8/8/2023 12:35:11 PM |
| **Unique Reference Number:** | CAA-FAA-BCABB-HCBCFEDF-GJBGCI-D |
| **Case Docket:** | 7/21/2023 - eSummons Issuance - 2 Pages |
| **Requesting Party Code:** | 500 |
| **Requesting Party Reference:** | A202308081230311148 |

## HOW TO VERIFY THIS DOCUMENT

This electronically certified Court Record contains a unique electronic reference number for identification printed on each page. This document is delivered in PDF format and contains a digital signature identifying the certifier and a tamper proof seal indicating whether this document has been tampered with. The second page of this document contains a digital signature indicating the certifier as the Broward County Clerk of Courts. Open this document using Adobe Reader software to verify the digital signature of the author. Visit https://www.browardclerk.org/ecertify to learn more about validating this certified copy.



Filing # 177991590 E-Filed 07/21/2023 04:09:16 PM          CACE-23-015818

Unique Code : CAA-FAA-BCABB-HCBCFEDF-GJBGCI-D Page 1 of 2

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY,
FLORIDA

CASE NO. CACE-23-015818

SMART CITY CAPITAL, LLC,

      Plaintiff,

v.

RAHUL BHARDWAJ, JAMES M. SANFORD,
MICHAEL BIDWELL, DIGITAL INFRASTRUCTURE
GROUP, INC., DIGITAL INFRASTRUCTURE
CAPITAL GROUP, LLC, SAG HARBOR ADVISORS,
INC., MERIDIAM INFRASTRUCTURE NORTH
AMERICA CORPORATION, ONLIGHTL3C, LLC,
and MICHAEL PEGUES,

      Defendants.

_____/

## SUMMONS

**THE STATE OF FLORIDA:**
**To Each Sheriff of Said State(s):**

**YOU ARE HEREBY COMMANDED** to serve this Summons and Complaint for Damages and
Permanent Injunctive Relief (the "Complaint") on Defendant:

**JAMES M. SANFORD**
107 Stony Hill Road
Sag Harbor, NY 11963

The Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, to
wit: **Scott L. Cagan, Esquire, GrayRobinson, P.A., 401 East Las Olas Boulevard, Suite
1000, Fort Lauderdale, FL 33301 - (954) 761-8111** within 20 days **"Except when suit is
brought pursuant to §768.28, Florida Statutes, if the State of Florida, one of its agencies, or
one of its officials or employees sued in his or her official capacity is a defendant, the time
to respond shall be 40 days. When suit is brought pursuant to §768.28, Florida Statutes,
the time to respond shall be 30 days."** after service of the Summons on the Defendant
exclusive of the day of service, and to file the original of the defenses with the Clerk of this
Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails

*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 07/21/2023 04:09:15 PM.****

I HEREBY ATTEST THAT THIS CERTIFIED DOCUMENT IS
A TRUE AND CORRECT COPY AS SAME APPEARS ON RECORD
WITH BROWARD COUNTY CLERK OF COURTS.

VERIFY AT: HTTPS://WWW.BROWARDCLERK.ORG/ECERTIFY



Digitally signed by The Honorable Brenda D. Forman
Date: 2023.08.08 12:35:12 -04'00'
Reason: Electronic Certified Copy
Location: 201 S.E. 6th Street, Fort Lauderdale, FL
33301

Unique Code : CAA-FAA-BCABB-HCBCFEDF-GJBGCI-D Page 2 of 2

to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED t     **JUL 24 2023**    }

CLERK OF THE CIRCUIT COURT

By:_____
       Deputy Clerk

BRENDA D. FORMAN

### IMPORTANTE

Usted ha sido demandado legalmente. Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demanadante).

### IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en memo temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

/17014/2#50975186 v1

2



# Electronically Certified Court Record

### (cover page)

This cover page is for informational purposes only and is not a requirement when presenting the **Electronic Certified Document**. Directly below the cover page, at the bottom of page 1, you will find the digital signature bearing the identity and authority of the Clerk. On the left side of each page is a unique code identifying the electronic certification for this document.

---

### DOCUMENT INFORMATION

| | |
|---|---|
| **Agency Name:** | Broward County Clerk of Courts |
| **Clerk of the Circuit Court:** | Honorable Brenda D. Forman |
| **Date Issued:** | 8/8/2023 12:35:07 PM |
| **Unique Reference Number:** | CAA-FAA-BCABB-HCBCFEDB-GJBGCH-E |
| **Case Docket:** | 7/21/2023 - eSummons Issuance - 2 Pages |
| **Requesting Party Code:** | 500 |
| **Requesting Party Reference:** | A202308081230311148 |

---

### HOW TO VERIFY THIS DOCUMENT

This electronically certified Court Record contains a unique electronic reference number for identification printed on each page. This document is delivered in PDF format and contains a digital signature identifying the certifier and a tamper proof seal indicating whether this document has been tampered with. The second page of this document contains a digital signature indicating the certifier as the Broward County Clerk of Courts. Open this document using Adobe Reader software to verify the digital signature of the author. Visit https://www.browardclerk.org/ecertify to learn more about validating this certified copy.



Filing # 177991590 E-Filed 07/21/2023 04:09:16 PM

CACE-23-015818

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY,
FLORIDA

CASE NO. CACE-23-015818

SMART CITY CAPITAL, LLC,

     Plaintiff,

v.

RAHUL BHARDWAJ, JAMES M. SANFORD,
MICHAEL BIDWELL, DIGITAL INFRASTRUCTURE
GROUP, INC., DIGITAL INFRASTRUCTURE
CAPITAL GROUP, LLC, SAG HARBOR ADVISORS,
INC., MERIDIAM INFRASTRUCTURE NORTH
AMERICA CORPORATION, ONLIGHTL3C, LLC,
and MICHAEL PEGUES,

     Defendants.

_____/

## <u>SUMMONS</u>

**THE STATE OF FLORIDA:**
**To Each Sheriff of Said State(s):**

**YOU ARE HEREBY COMMANDED** to serve this Summons and Complaint for Damages and
Permanent Injunctive Relief (the "Complaint") on Defendant:

**RAHUL BHARDWAJ**
5906 Silverton Drive
Allen, TX 75002

The Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, to
wit: **Scott L. Cagan, Esquire, GrayRobinson, P.A., 401 East Las Olas Boulevard, Suite
1000, Fort Lauderdale, FL 33301 - (954) 761-8111** within 20 days **"Except when suit is
brought pursuant to §768.28, Florida Statutes, if the State of Florida, one of its agencies, or
one of its officials or employees sued in his or her official capacity is a defendant, the time
to respond shall be 40 days.  When suit is brought pursuant to §768.28, Florida Statutes,
the time to respond shall be 30 days."** after service of the Summons on the Defendant
exclusive of the day of service, and to file the original of the defenses with the Clerk of this
Court either before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails
to do so, a default will be entered against that Defendant for the relief demanded in the
Complaint.

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 07/21/2023 04:09:15 PM.****



I HEREBY ATTEST THAT THIS CERTIFIED DOCUMENT IS
A TRUE AND CORRECT COPY AS SAME APPEARS ON RECORD
WITH BROWARD COUNTY CLERK OF COURTS.

VERIFY AT: HTTPS://WWW.BROWARDCLERK.ORG/ECERTIFY

Digitally signed by The Honorable Brenda D. Forman
Date: 2023.08.08 12:35:08 -04:00
Reason: Electronic Certified Copy
Location: 201 S.E. 6th Street, Fort Lauderdale, FL
33301

Unique Code : CAA-FAA-BCABB-HCBCFEDB-GJBGCH-E Page 2 of 2

DATED this 2          JUL 24 2023

CLERK OF THE CIRCUIT COURT

By:_____

Deputy Clerk

BRENDA D. FORMAN

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en memo temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

/17014/2/#50975078 v1

2



# Electronically Certified Court Record

### (cover page)

This cover page is for informational purposes only and is not a requirement when presenting the **Electronic Certified Document**. Directly below the cover page, at the bottom of page 1, you will find the digital signature bearing the identity and authority of the Clerk. On the left side of each page is a unique code identifying the electronic certification for this document.

---

### DOCUMENT INFORMATION

| | |
|---|---|
| **Agency Name:** | Broward County Clerk of Courts |
| **Clerk of the Circuit Court:** | Honorable Brenda D. Forman |
| **Date Issued:** | 8/8/2023 12:35:25 PM |
| **Unique Reference Number:** | CAA-FAA-BCABB-HCBCFEFA-GJBGDB-G |
| **Case Docket:** | 7/21/2023 - eSummons Issuance - 2 Pages |
| **Requesting Party Code:** | 500 |
| **Requesting Party Reference:** | A202308081230311148 |

---

### HOW TO VERIFY THIS DOCUMENT

This electronically certified Court Record contains a unique electronic reference number for identification printed on each page. This document is delivered in PDF format and contains a digital signature identifying the certifier and a tamper proof seal indicating whether this document has been tampered with. The second page of this document contains a digital signature indicating the certifier as the Broward County Clerk of Courts. Open this document using Adobe Reader software to verify the digital signature of the author. Visit https://www.browardclerk.org/ecertify to learn more about validating this certified copy.



Unique Code : CAA-FAA-BCABB-HCBCFEFA-GJBGDB-G Page 1 of 2

Filing # 177991590 E-Filed 07/21/2023 04:09:16 PM          CACE-23-015818

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY,
FLORIDA

CASE NO. CACE-23-015818

SMART CITY CAPITAL, LLC,

     Plaintiff,

v.

RAHUL BHARDWAJ, JAMES M. SANFORD,
MICHAEL BIDWELL, DIGITAL INFRASTRUCTURE
GROUP, INC., DIGITAL INFRASTRUCTURE
CAPITAL GROUP, LLC, SAG HARBOR ADVISORS,
INC., MERIDIAM INFRASTRUCTURE NORTH
AMERICA CORPORATION, ONLIGHTL3C, LLC,
and MICHAEL PEGUES,

     Defendants.

_____/

<u>**SUMMONS**</u>

**THE STATE OF FLORIDA:**
**To Each Sheriff of Said State(s):**

**YOU ARE HEREBY COMMANDED** to serve this Summons and Complaint for Damages and
Permanent Injunctive Relief (the "Complaint") on Defendant:

**DIGITAL INFRASTRUCTURE CAPITAL GROUP, LLC**
Capitol Services, Inc. (Registered Agent)
108 Lakeland Ave.
Dover, DE 19901

The Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, to
wit: **Scott L. Cagan, Esquire, GrayRobinson, P.A., 401 East Las Olas Boulevard, Suite
1000, Fort Lauderdale, FL 33301 - (954) 761-8111** within 20 days **"Except when suit is
brought pursuant to §768.28, Florida Statutes, if the State of Florida, one of its agencies, or
one of its officials or employees sued in his or her official capacity is a defendant, the time
to respond shall be 40 days.  When suit is brought pursuant to §768.28, Florida Statutes,
the time to respond shall be 30 days."** after service of the Summons on the Defendant
exclusive of the day of service, and to file the original of the defenses with the Clerk of this
Court either before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 07/21/2023 04:09:15 PM.****

I HEREBY ATTEST THAT THIS CERTIFIED DOCUMENT IS
A TRUE AND CORRECT COPY AS SAME APPEARS ON RECORD
WITH BROWARD COUNTY CLERK OF COURTS.

VERIFY AT: HTTPS://WWW.BROWARDCLERK.ORG/ECERTIFY



Digitally signed by The Honorable Brenda D. Forman
Date: 2023.08.08 12:35:26 -04:00
Reason: Electronic Certified Copy
Location: 201 S.E. 6th Street, Fort Lauderdale, FL
33301

to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED th          JUL 24 2023

CLERK OF THE CIRCUIT COURT

By:_____

Deputy Clerk

BRENDA D. FORMAN

### IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demanadante).

### IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en memo temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

/17014/2/#50981340 v1

2